## PERPER et al. v. DANFORD et al.
### No. 734.

Municipal Court of Appeals for the District of Columbia.

Jan. 26, 1949.

774

Marvin Willig, of Washington, D. C., for appellants.

James A. Crooks, of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Plaintiffs, hereafter referred to as the tenant, sued defendants, hereafter referred to as the landlord, under section 10(a) of the District of Columbia Emergency Rent Act,[1] for double the amount of alleged overcharge of rent. From a judgment for the tenant in the sum of $1,650, plus $100 attorney's fee, the landlord has appealed.

The case was tried without testimony, the parties being in substantial agreement as to the following facts. Prior to January 1, 1941, the freeze date under the Rent Act, the tenant began to rent an apartment from a predecessor in title to the present landlord. The rent for the apartment unfurnished on January 1, 1941, was $100 per month. In 1942, with permission of the then landlord, the tenant sublet the apartment furnished at a rental of $250 per month, the amount determined by the Rent Administrator as the rent ceiling for the furnished apartment. This subletting continued until 1945 when the present landlord became owner of the building. The present landlord objected to the subletting and after some negotiations it was agreed that the landlord would consent to further subletting on the condition that the tenant pay an additional $75 per month. This arrangement was put into effect and continued for a period of eleven months. In 1946 the landlord again objected to continued subletting and the tenant made complaint to the office of the Rent Administrator. Someone in that office raised the question of the legality of the $75 monthly payments which the landlord had been collecting over and above the rent ceiling. In view of the claim by the tenant that the landlord was guilty of an overcharge and the claim by the landlord that the tenant was guilty of a violation of his tenancy by reason of the subletting, the parties came to an agreement evidenced by the following writing addressed to the landlord and signed by the tenant: "In consideration of your having permitted us to sublet Apartment No. 214 during the period that rent control is continued we hereby release you from and waive any claim we may have against you to the date hereof."

Following this the tenant continued to sublet and paid monthly rent of $100, no longer paying the additional $75 per month. This arrangement continued until the latter part of 1947 when the landlord demanded possession of the apartment on the ground that a member of the partnership constituting the landlord desired possession for his own use and occupancy. The tenant refused to surrender possession, contending that this demand constituted a repudiation

[1] Code 1940, Supp. VI, § 45—1610 (a).

of the parties' written agreement. Thereafter the landlord sued for possession. The tenant contested the suit but judgment went for the landlord and no appeal was taken by the tenant.

After surrendering possession under the judgment the tenant brought the present action on the ground that the additional payments of $75 per month for the period of eleven months constituted payment of rent in excess of the maximum rent ceiling. As previously stated the tenant was awarded judgment for double the amount of the alleged overcharge plus an attorney's fee.

■ .The landlord contends that the $75 monthly payments were not paid as rent but were paid for the right to sublet, and that therefore the landlord did not receive rent in excess of the rent ceiling. The Rent Act defines "rent" as "the consideration, including any bonus, benefit, or gratuity, demanded or received * * * for the use or occupancy of housing accommodations or the transfer of a lease for such accommodations." [2] Assuming the landlord's contention that the $75 payments were made strictly and entirely for the right to sublet, nevertheless we think the payments constituted rent, because the subletting was a use of the apartment and anything paid for such use constituted rent.[3]

The more serious question is the effect of the writing hereinabove quoted. Both parties referred to this paper as a release. The landlord contends that it is a bar to this action. The tenant says it is no bar because the consideration for it failed. The parties are in general agreement that the intent and purport of the writing was that in consideration of the release or discharge of the tenant's claim against the landlord for the overcharge, the landlord agreed to permit the tenant to continue to sublet. However, the parties disagree as to how long the right to sublet should continue. The landlord says it was to continue only so long as the tenant was in lawful possession, that the judgment in the possession suit terminated the tenant's right to posses-

sion and as a consequence also terminated the right to sublet. The tenant contends that the right to sublet was to continue so long as rent control continued and that since the right to sublet depended on possession the effect of the agreement was that the landlord promised not to interfere with the tenant's possession so long as rent control continued and the tenant performed the obligations of the tenancy.

■ We do not reach a decision as to how long the right of the tenant to sublet was to continue or whether the landlord breached its promise in that respect. Our question is the nature of the instrument and its effect on the tenant's claim for the overcharge of rent. It is evident that the parties intended by the writing to settle their differences. The tenant had a disputed claim for an overcharge. The landlord asserted a right to terminate the tenancy because of the subletting. In consideration of the landlord's agreement or "permission" to continued subletting, the tenant released the landlord from the claim for overcharge. Although both parties refer to the paper as a release, it was not a technical release. It represented more than a mere acknowledgment of the satisfaction of the tenant's claim. It evidenced an agreement by the tenant to accept in satisfaction of the claim the agreement of the landlord to consent to subletting. It was an accord. An accord alone does not discharge the prior debt or claim. The accord must be performed. There must be both accord and satisfaction. The tenant's attack on the effect of the instrument on the ground of failure of consideration raises the question whether the landlord's failure to fully perform his agreement constituted a failure of satisfaction, thereby permitting the tenant to sue on the original claim. This presents the question whether the parties intended full performance by the landlord to alone constitute satisfaction or intended that the agreement itself be accepted as immediate satisfaction and discharge of the tenant's claim.[4] The tenant's pre-existing claim

---

[2] Code 1940, Supp. VI, § 45—1611 (c).

[3] Cf. Auerbach v. Fleming, Em.App., 161 F.2d 207, certiorari denied, 331 U.S. 850, 67 S.Ct. 1742, 91 L.Ed. 1859, rehearing denied, 332 U.S. 787, 68 S.Ct.

36; Porter v. Fiske, 74 Cal.App.2d 332, 171 P.2d 971; Woods v. Dodge, 1 Cir., 170 F.2d 761.

[4] Restatement, Contracts, §§ 417, 418; Annotation 10 A.L.R. 222.

was not for an acknowledged liquidated sum but rested on a disputed ground. Under these circumstances the rule of interpretation is that the accord itself was accepted as satisfaction.[5] Performance by the landlord was to commence immediately and extend over an indefinite time. It would be unreasonable to assume that despite immediate and continued performance by the landlord that the parties intended that the disputed claim of the tenant should be held in abeyance, to be brought forth and asserted by the tenant whenever in the future the landlord should breach his performance. It is a far more reasonable interpretation that the parties intended the disputed claim to be finally discharged and that in satisfaction of it the tenant accepted the promise of the landlord to continue permission to sublet. Upon breach by the landlord the tenant could sue for damages for that breach but could not go back of the agreement and revive the discharged claim.[6] In our opinion there was an accord and satisfaction which discharged the claim on which the present action was brought and such action cannot be sustained.

Reversed.

---

[5] Restatement, Contracts, § 419.

[6] Cf. Davidoff v. Thomas A. Edison, Inc., 2 Cir., 45 F.2d 565, certiorari denied, 283 U.S. 839, 51 S.Ct. 487, 75 L.Ed. 1450.