Bentuey Kassal, J.
Over the years, a devious pattern of delayed settlement payments has developed involving unsuspecting plaintiffs who have agreed to settle personal injury claims with so-called ‘ ‘ self-insured ’ ’ taxicab companies. Having recently become aware of this, I have since learned that this is a common and prevalent practice among these carriers and has existed for some time. However, in my opinion, this practice should be stopped, and I am, therefore, giving notice to the Bar of this court’s views on settlement practice and due diligence in making payment.
The facts in the present case illustrate the deliberate tactics used by such defendants to evade the prompt consummation of settlement agreements. The plaintiff was a passenger in a self-insured taxicab which collided with another vehicle represented by an insurance company. The personal injury claim was settled for $625 at a conference párt on October 8, 1970, with the taxicab defendant agreeing to pay $475 and the insured codefendant, $150. General releases and stipulations of discontinuance were mailed to the defendants by November 4, 1970, and the insured co-defendant remitted its $150 check shortly thereafter. However, the attorneys for the self-insured taxicab company, Gerberbaum, Garson and Goldberg, Esqs., evidently not only did little to consummate the settlement, but they failed to respond to numerous telephone calls from plaintiff’s attorney. Two letters of inquiry on November 25 and December 22 elicited no reply. On January 6, 1971, three months after the case had *942 been settled, plaintiff’s attorney at long last was able to speak with one of the defendant’s attorneys on the telephone. The explanation given for the delay in payment was that there had been a “ lack of communication ” with the client, but that the client was financially able to pay and had the required surety bond. Plaintiff’s attorney was asked to call again the next week for the payment date. He did call about 10- days later, but his messages were again ignored by the defendant’s attorneys. In frustration and desperation, on January 21, 1971, plaintiff’s attorney wrote the defendant’s attorney reciting his complete lack of success in completing the settlement, and sent a copy of this letter to the court. I immediately directed that there be a hearing on February 3, 1971, on the reasons for this delay. The day before the hearing, plaintiff’s attorney received a telephone offer for the delivery of a check to be postdated February 4,1971 (the day after the hearing) and I directed that no action be taken until the hearing.
At the hearing I was informed by defendant’s attorneys that plaintiffs are always advised of an expected 60-day delay in payment (although more than three months had elapsed here) and the plaintiff could collect on the surety bond. This facile statement is erroneous because this bond is an indemnification only if an execution of judgment is returned unsatisfied. Section 370 of article 8 of the Vehicle and Traffic Law gives taxicab companies the right to post an indemnity bond in lieu of an insurance policy, but this bond is not effective for settlement purposes. It appears, moreover, that the Commissioner of Motor Vehicles has no jurisdiction whatsoever over these taxicab companies, as distinguished from the discretion which he has in permitting other motor vehicle owners to be self-insured under articles 6 and 7 of the law. I believe that legislation should be enacted to place taxicab companies in the same position as these other owners. Nevertheless, this obvious gap in the law should not be a refuge for dilatory defendants.
Returning to the instant case, I find indefensible the participation by the defendant’s attorneys in the delay in the consummation of this settlement. I suggest such conduct be discontinued immediately. I am advising attorneys who permit or encourage their clients to engage in these tactics, that in my opinion they may be acting unethically and in violation of numerous Canons of Professional Ethics, New York State Bar Association, namely: Canon 16, restraining clients from improprieties; Canon 18, treatment of witnesses and litigants; Canon 22, candor and fairness; Canon 24, right of a lawyer to control *943 incidents of the trial; Canon 25, taking technical advantage of opposing counsel; agreements with him. I particularly call attention to the portion of Canon 25, which reads ‘1 hut it is dishonorable to avoid performance of agreement fairly made because it is not reduced to writing ’ ’.
This is not to say that I am discouraging appropriate and vigorous defense throughout litigation prior to settlement; hut, once a settlement is effected, its finalization should proceed with due diligence. In my opinion, due diligence means less than 30 days from receipt of settlement papers. If there are unusual circumstances calling for a lengthier period, plaintiff’s attorneys should he so advised at the time of settlement, and, since there are no ready means for collecting a settlement, I recommend that a stipulation be entered into at the time of settlement for the entry of judgment upon nonpayment.
Therefore, I find the defendant to he grossly in default in fulfilling its implicit undertaking to pay the settlement in a reasonable period of time and I am permitting the plaintiff’s attorney to elect either of the following alternatives: (a) he may either finalize the settlement by paying his client the sums held in escrow with him; or (b) he may request a reopening of the case with a trial date to be fixed within 10 days. In either case, the defendant shall pay the plaintiff discretionary costs in the sum of $50, as a condition for vacating this default.
I am referring this decision and the minutes of the February 3, 1971 hearing to Mr. Justice Edward Thompson, the Administrative Judge of this court, for any further action he deems advisable.