**Andres HALL, Plaintiff-Appellee,**

**v.**

**PEOPLE TO PEOPLE HEALTH FOUNDATION, INC., and Grace Line, Inc., Defendants-Appellants.**

**No. 117, Docket 73-1705.**

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1973.

Decided Jan. 4, 1974.

Renate H. Model, New York City (F. L. Wertheimer, New York City, on the brief), for appellee.

Joseph F. Ryan, Jr., New York City (Kirlin, Campbell & Keating and Charles N. Fiddler, New York City, on the brief), for appellants.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

PER CURIAM:

The People to People Health Foundation, Inc., and the Grace Line, Inc., appeal from an order entered on March 13, 1973 in the Southern District of New York in which Judge Carter directed them to pay $10,000 to Andres Hall under the terms of an alleged settlement agreement. Appellants claim that there was never a valid settlement. We agree and, therefore, reverse.

On August 22, 1969, Andres Hall sued under the Jones Act, 46 U.S.C. § 688, for injuries allegedly suffered on August 23, 1968 while he was employed on the S. S. Hope, allegedly owned by the People to People Health Foundation and operated by the Grace Line. Hall claimed that because of appellants' negligence a fire pump on which he was working leaked and sprayed him with scalding water which caused him to twist in such a manner that his neck was injured. Appellants' answer denied liability.

On a later voyage of the S. S. Hope, Hall was involved in a fracas with one of the officers on February 7, 1970. He was subsequently indicted for assault and convicted after a trial in the Southern District before Judge Levet. The conviction was affirmed on appeal. United States v. Hall, 448 F.2d 114 (2d Cir. 1971), cert. denied, 405 U.S. 935, 92 S.Ct. 971, 30 L.Ed.2d 810 (1972). The complaint filed in 1969, of course, did not refer to this incident.

The events at issue here began with settlement negotiations between counsel for the parties that started in late 1971. On December 16, 1971, Hall's counsel informed him that he could get $10,000 if he would settle his claim and Hall agreed. Appellants sent Hall's counsel a release on January 25, 1972, which stated that all claims against appellants including those arising from both the 1968 accident and the 1970 assault were waived in return for the $10,000.[1] Since he felt that he might have a claim for damages for injuries suffered in the assault, Hall balked at signing the release and his counsel informed appellants that the release was "not in the form agreed upon." A second form of release was sent on April 13, 1972, but this was objected to on the grounds that it did not clearly exclude the assault. Appellants' counsel then told Hall's counsel to type in a clause specifically excluding the assault. Although this finding is disputed, Judge Carter found that Hall never refused to sign the revised release.

On May 3, 1972, appellants moved to dismiss the case and pay the $10,000 into court on the grounds that Hall had refused to sign the release even though he had authorized his attorney to settle the case for $10,000. On May 5, Hall's counsel submitted an affirmation in support of the motion in which she stated that Hall had refused to sign a release exempting the assault. Hall himself sent a letter asking for a postponement in which he indicated that he had refused to sign the earlier release, but said that he had not seen a new release that his attorney had told him about. He also expressed the belief that her affirmation of May 5 demonstrated that his attorney never "had my best interest at heart." Probably as a result of this letter, Judge Frankel denied the motion on May 16.

After May 16, the parties began to prepare for a trial. For example, on May 18 Hall's attorney submitted a statement to the district court that the parties had been unable to settle and also requested that appellants answer previously sent interrogatories. At least one person, a Dr. Webb, was subsequent-

---

1. This was in addition to the $5,187.70 which had been paid to Hall by appellants when he was unable to work.

ly deposed. On October 12, 1972, appellants' counsel confirmed to Hall's attorney that the settlement was no longer viable and that the case would be litigated.

On November 2, 1972, Hall finally signed the revised release. Appellants, however, refused to accept any settlement at that late date.[2] Hall then moved to enforce the settlement. Judge Carter's decision in favor of Hall is on appeal here.

Apparently overlooking the distinction between an executory accord and a mere offer to settle, see 6 A. Corbin, Contracts § 1270 (1962), appellants center their arguments on whether there was a valid offer and acceptance and on the basic principle that a rejection of an offer terminates the power of acceptance unless the offer otherwise provides. Appellants dispute Judge Carter's finding that Hall never rejected their offer of settlement since he never refused to sign the revised release. Appellants claim that Hall is bound by his counsel's affirmation on May 5, 1972, which stated he had refused to sign the revised release, that the evidence indicated that Hall refused to sign the release, and that Judge Frankel's order of May 16 indicated that there had been a rejection by Hall.

 We need not decide these issues since we think there was an executory accord on December 16, 1971, which

Hall subsequently abandoned by failing to sign the release conforming to the agreement within a reasonable time.[3] When as here, a settlement agreement fixes no time for the performance of a particular condition, performance must be within a reasonable time. See Kotlowitz v. Vogue Service Co., Inc., 65 Misc.2d 940, 319 N.Y.S.2d 263 (N.Y. Civ.Ct.1971); Bruce Realty Co. of Florida v. Berger, 327 F.Supp. 507 (S.D.N.Y.1971). See generally 6 S. Williston, Contracts § 832, at 96–100 (3d ed. 1962). Viewing the facts most favorably to Hall, he had not refused to sign the release by May 16, 1972. A reasonable time to sign in this case is a few days or, at most, a few weeks after May 16. Counsel had reached a settlement to which Hall had agreed in principle. After sending the letter it was incumbent upon him to act promptly to sign the release or to abandon the settlement agreement. A delay of five months in signing is entirely unreasonable.[4] The other parties would then naturally have assumed that he had no intention of signing and would change their positions accordingly. To the extent that this delay was caused by Hall's counsel, he is bound by her failure to act. Cf. Link v. Wabash R. R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

---

**2.** One possible factor in this refusal to settle may be Dr. Webb's testimony on deposition that Hall had never complained about any accident to him and that x-rays showed an old, not a new, neck injury.

**3.** The parties have not discussed the issue, but since the agreement was allegedly made in New York and was to be performed in New York, New York law governs. Because the issue is one of settling a federal claim

brought in a federal district court, we have ancillary jurisdiction over it. See J. Moore, Federal Practice ¶0.90[3] (1970).

**4.** Hall did spend part of this period in the federal facility at Danbury, Connecticut, serving his sentence on the assault charge. Nevertheless, his counsel could have sent him the release by mail, which he then could have signed and had notarized.