Douglas F. WARNER, Plaintiff-Appellant,

v.

Donat ROSSIGNOL, Defendant-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Intervenor-Appellee.

No. 74–1329.

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1975.

Decided April 7, 1975.

Julius B. Levine, Waterville, Me., with whom Frederick E. Levine and Levine, Brody & Levine, Waterville, Me., were on brief, for plaintiff-appellant.

Albert L. Bernier, Waterville, Me., with whom Marden, Dubord, Bernier & Chandler, Waterville, Me., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal involves the aftermath of a settlement which, to use the vernacular, became unstuck. Douglas F. Warner sued Donat Rossignol in tort under the diversity jurisdiction for injuries resulting from an accident. The issue of liability was tried first; and a jury returned special findings that Rossignol's servant was "guilty" of negligence which was a proximate cause of the accident, and that plaintiff Warner was not so guilty. On March 1, 1974, the district court entered "judgment" for plaintiff against defendant "in an amount of damages to be determined by the court after further jury trial". The damages trial was scheduled for March 14 at 9:30 a. m. before the same jury. However, on March 13, counsel for defendant notified the court that the case was settled,

and the court accordingly removed it from the trial calendar and dismissed the jury.

Under the settlement orally concluded by counsel, Rossignol was to pay Warner $6,000 and Warner was to furnish releases to Rossignol, following which counsel would file a stipulation of dismissal of the action with prejudice and without costs.

All proceeded smoothly for sometime thereafter: defendant's attorney mailed releases and stipulations of dismissal to plaintiff's attorney on March 27, stating,

> "Upon receipt of all these documents properly executed, I will deliver or remit (in accordance with your instructions) our certified or bank check (again in accordance with your instructions) forthwith. I would appreciate it if you would obviously [sic] give me instructions as to how you desire the check to be made out."

Warner's attorney responded on April 3, transmitting the executed dismissals and Warner's release, but declining to furnish a requested release from Warner's parents. He wrote,

> "Please hold the enclosed release and Stipulations of Dismissal in escrow and let them be of no effect until I receive a certified check payable to me as Attorney for Douglas Warner for $6,000."

On April 5, 1974, Warner's attorney furnished Rossignol's attorney by mail with a requested discharge of real estate attachment.

On April 9, 1974, Rossignol's attorney wrote Warner's attorney acknowledging receipt of the foregoing, questioning the absence of a parental release, and stating that he had forwarded the Stipulation of Dismissal of the District Court case to defendant's insurer's attorney for his signature,

> "all upon condition that these Stipulations are to be in no way construed to be effective until you have received the total settlement amount of $6,000.00."

In his letter of even date to the insurer's attorney, defendant's attorney reiterated that the stipulations "cannot, under no [sic] circumstances, be considered as effective until [plaintiff] has received the settlement check in the amount of $6,000.00".

On April 11, 1974, Warner's attorney forwarded a release from Warner's parents, thus terminating the one disagreement that had ruffled the so far placid waters.

Rossignol did not, however, immediately tender the $6,000 although his attorney acknowledged by letter of April 21 that plaintiff's obligations had been fulfilled. When plaintiff's counsel pressed for payment in May, he was told by Rossignol's attorney that Rossignol had been seeing other attorneys and had resisted the attorney's pleas for a check.

On May 12, after forewarning defendant that he intended to do so, plaintiff's attorney wrote to the Clerk of the District Court that plaintiff "withdraws his willingness to enter this compromise", assigning as the principal reason Rossignol's unwillingness to pay the $6,000. Plaintiff's attorney insisted that the original settlement had contemplated payment within two weeks from March 13, 1974. Plaintiff requested that the case be scheduled for jury trial on damages only.

On May 27, defendant's attorney wrote to the Clerk confirming that a settlement had been made and his own authority to settle, but denying that the settlement had included any discussion regarding timing of payment. The attorney wrote that he had,

"requested payment several times from my client. . . . My client has also apparently consulted with allegedly a 'dozen' other attorneys. He appears at junctures to be quite disturbed. . . . I forwarded a copy of [plaintiff's counsel's letter demanding payment] to my client. He has contacted this office twice without speaking to me, the last time indicating that there was a death in the fam-

ily and that he would contact me in a day or two. . . . I do not know what my client's current position is." The letter ended with the statement that in the absence of arrangements for payment, counsel felt he should withdraw.

On May 30, Rossignol finally provided his attorney with a Treasurer's check for $6,000 payable to plaintiff, which the attorney undertook to deliver. Plaintiff, however, refused to accept it, taking the position that the settlement had been terminated, and that he would proceed with assessment of damages in his original action. Thereupon Rossignol filed a motion entitled "Motion to Enforce Settlement and for Entry of Order Concerning Payment of Judgment in Full" to which he attached the $6,000 check and the various executed releases and dismissal documents. In the motion, Rossignol requested an order "enforcing the settlement and providing that said judgment be satisfied in full and that said check be turned over to the attorney for the Plaintiff."

Plaintiff, in response, moved for summary judgment both on his earlier requests for assessment of damages in the original action and on defendant's motion to enforce the settlement. Plaintiff also requested that if the matter could not be summarily resolved in his favor, he be granted a jury trial on the factual issues raised by the parties' motions.

The motions were heard by the court on June 21 at an unreported proceeding attended by counsel. On the basis of a review of the documents on file in the case, and of the oral representations of counsel, but without hearing any evidence, the court found, in essence, that there was a settlement; that by April 23 releases and a dismissal had been executed; that by May 30 defendant delivered a Treasurer's check for $6,000 to his attorney, who notified plaintiff's attorney; and that plaintiff's attorney had refused to accept the check in satisfaction of the settlement. The court made no findings as to whether or not defendant had by his actions and those of his attorney repudiated or committed a

breach of the original compromise agreement, so as to permit plaintiff to withdraw. The court denied plaintiff's motion for a jury trial on damages, and granted defendant's motion to enforce the settlement. The clerk was ordered to deliver the $6,000 check to plaintiff's counsel in full satisfaction of the agreement for settlement, and to deliver and file the appropriate releases and stipulation of dismissal.

On appeal, plaintiff argues that he was at liberty to revoke the settlement, both because parties to an unconsummated accord and satisfaction can always revoke prior to satisfaction and, more plausibly, because defendant repudiated and failed to perform his part of the bargain.

 The first argument is plainly wrong. A compromise agreement, fairly arrived at, is an enforceable contract both under Maine law and general doctrine. Benner v. Lunt, 126 Me. 167, 171–72, 136 A. 814, 816 (1927); Peters v. Wallach, —— Mass. ——, 321 N.E.2d 806, 810 (1975); 15 Am.Jur.2d Compromise and Settlement § 25 (1964). Where the agreement is made, as here, under the eyes of the court, it is a most solemn undertaking, requiring the lawyers, as officers of the court, to make every reasonable effort to carry it through to a successful conclusion. See Langlois v. Langlois, 5 App.Div.2d 75, 169 N.Y.S.2d 170 (1957).

 Yet we cannot say that such a compromise agreement may never be rescinded by an innocent party prior to consummation should the other repudiate or commit a material breach of the terms of the agreement. Defendant argues that the compromise should be viewed as a "substituted contract,"

meaning, it seems,[1] that the executory agreement to settle—here to take $6,000 in return for certain releases and stipulations—was itself accepted in substitution for plaintiff's original cause of action. Under defendant's theory, plaintiff's rights in the event of breach would be limited to enforcing the agreed settlement. Most jurisdictions, including Maine, hold that whether compromises are to be styled an "accord executory" or a substituted contract, depends on the intention of the parties. Akerley v. Lammi, 217 A.2d 396, 398 (Me.1966); Goldbard v. Empire State Mutual Life Insurance Co., 5 App.Div.2d 230, 171 N.Y.S.2d 194, 198–99 (1958). But while "intention" (better called "interpretation" in this case, since there is no suggestion that the parties ever thought about the matter) is frequently a question for the trier of fact, it is not always so. See, e. g., Perper v. Danford, 63 A.2d 773 (D.C.Mun.Ct.1949); cf. Wiggin v. Sanborn, 161 Me. 175, 210 A.2d 38 (1965). The undisputed format of this settlement precludes any reasonable interpretation that the informal agreement to settle between lawyers was accepted as an immediate and final substitute for plaintiff's pending action. Counsel for both defendant and plaintiff provided in their correspondence that the stipulation dismissing the original action was to be held in escrow and was not to be filed until payment of the $6,000. Such a reservation would have been meaningless if it was their understanding that the litigation was ended by their unexecuted agreement. An agreement requiring releases and stipulations of dismissal to be held pending payment, is plainly inconsistent with the assumption that the mere making of the agreement irrevocably terminated the original action.

1. Labels in this area, e. g. "substituted contract", "accord and satisfaction", etc., have often carried different meanings, compounding the confusion in the case law. Thus, "substituted contract" seems sometimes to mean a compromise which when made totally extinguishes the prior cause, and sometimes only an enforceable contract (as distinct from earlier "accords" which could be abandoned by either party prior to "satisfaction"). See Lan-

glois v. Langlois, 5 App.Div.2d 75, 169 N.Y. S.2d 170 (1957). There the court held that a settlement during trial was an enforceable "superseding contract", even though under New York law oral compromises were normally unenforceable "executory accords". But plaintiff could repudiate even such a superseding contract for good cause. See generally 6 Corbin on Contracts § 1268 (1962).

Moreover, the cases give strong support to the presumption that a settlement agreement, however labeled, will not bar recourse to the original cause of action in the event that defendant repudiates or commits a breach of the terms of the agreement. Pacheco v. Delgardo, 46 Ariz. 401, 52 P.2d 479 (1935); Whitfield v. Whittington, 34 Del.Ch. 34, 99 A.2d 196 (1953); Wilson v. Bogert, 81 Idaho 535, 542–43, 347 P.2d 341, 345–46 (1959); Zager v. Gubernick, 205 Pa.Super. 168, 173–74, 208 A.2d 45, 49 (1965); Shield Co. v. Williamson, 355 S.W.2d 811 (Tex. Civ.App.1962). If it were not so, a client who believed he was surrendering a lawsuit for $6,000 cash in hand might find that he in fact surrendered it only for an empty promise of $6,000. *See, e. g.,* Kotlowitz v. Vogue Service Co., 65 Misc.2d 940, 319 N.Y.S.2d 263 (Civ.Ct.N.Y.C. 1971). We hold, therefore, that while the agreement to compromise was binding and enforceable against a defaulting party—barring plaintiff from proceeding with his original action in breach of the agreement—plaintiff did not entirely relinquish his original cause upon entering into the agreement of compromise. The tort action would only be conclusively terminated when the $6,000 was paid against delivery of the releases and dismissal stipulation; until then it remained in abeyance and if defendant repudiated the settlement or committed a material breach of its terms, plaintiff could elect either to sue for $6,000 or to rescind and press forward upon the original cause.

■ Plaintiff insists that defendant's foot dragging coupled with defendant's counsel's oral and written responses entitle him to conclude that defendant had repudiated and would not pay the $6,000. He asserts a right to rescind and to proceed with the assessment of damages in the original action. We agree with plaintiff that he was entitled to an evidentiary trial on these matters. The brief hearing before the district court, attended only by counsel, was an insufficient substitute, especially as the court made no mention of having considered this critical aspect.

We do not, however, agree with plaintiff that we are in a position to rule summarily in his favor. Only some of the evidence is before us or can be said to be undisputed. Plaintiff contends the parties understood that time was of the essence, with payment to be made in several weeks. The defendant denies this. Also relevant is what may have been said in May on the subject of defendant's willingness or lack of willingness to perform. We must regard it as still an open question whether defendant repudiated or withheld performance for so unreasonably long a period of time as to commit a material breach. If defendant did not repudiate or commit a material breach of the settlement agreement, plaintiff may not now decline the $6,000 and defendant is entitled to specific enforcement of the compromise. These matters must be resolved in the district court after both sides have an opportunity to place the material correspondence and conversations in evidence.

We thus vacate and remand for a hearing to determine whether or not defendant's conduct was such as to justify plaintiff's attempted withdrawal.

■ Plaintiff has claimed a jury trial on these matters. Accord and satisfaction is a traditional affirmative defense at law apparently requiring, if demanded, a jury determination of disputed material facts. *See* Brown v. Spofford, 95 U.S. 474, 483–84, 24 L.Ed. 508 (1877); Cushing v. Wyman, 44 Me. 121 (1857); Fed.R.Civ.P. 8(c) & 38. But this is not a case where the defending party raises a consummated accord and satisfaction in bar. Rather the defendant seeks to block plaintiff's continuation of an original action by asking the court to specifically enforce a settlement contract which plaintiff refuses to carry out. Specific performance is an equitable proceeding. Moreover, the agreement sought to be enforced arose out of negotiations between attorneys in the midst of a trial. A judge seems better suited to assess the reasonableness of the parties' conduct under all the circumstances. We hold it within the authority of a

judge[2] sitting without jury to make the necessary findings of fact and rulings.

A final question is whether, if plaintiff prevails on his asserted right to abort the settlement, the issue of liability need be tried anew in the original action. That question has yet to be raised and passed upon in the district court, but we believe that certain observations should now be made:

First, on the present record, we see no legal barrier against the assessment of damages alone by a new jury.

Second, while the decision to grant or deny separate trials under Fed. R.Civ.P. 42(b) is one committed to the sound discretion of the trial court, Bedser v. Horton Motor Lines, Inc., 122 F.2d 406 (4th Cir. 1941); Collins v. Metro-Goldwyn Pictures Corp., 106 F.2d 83 (2d Cir. 1939), and may be reversed at any point before final judgment is entered, Partmar Corp. v. Paramount Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954), the procedure selected should be "conducive to expedition and economy." See Walder v. Paramount Publix Corp., 23 Fed.R.Serv. 183, 188 (S.D.N.Y. 1956). Since a trial on liability has already been completed, convenience, expedition and economy are likely to be disserved by trying liability again.

Third, since the original action may be pursued at all only if plaintiff justifiably withdrew from the settlement by reason of defendant's default, it might seem unfair to deprive plaintiff of his favorable verdict and to reward defendant by granting him a new trial.

While the foregoing considerations all indicate the desirability of limiting any future trial to damages, we leave that decision, initially, to the district court.[3] It would be inappropriate for us to decide, since there may be counterbalancing factors going to the fairness of the first trial or the ability of a new jury to assess damages about which we have no knowledge.

Remanded for proceedings in accordance herewith.

---

2. The case will, of course, go to a different district judge, under the practice customary in this Circuit.

3. We do not accept plaintiff's contention that a new trial motion with respect to liability had to be filed within ten days of entry of the interlocutory judgment entered in March of 1974. "The judgment" referred to in Fed.R. Civ.P. 59(b) is the final judgment that will be entered after damages are assessed.