**KAPCO MFG. CO., INC., Plaintiff,**

**v.**

**C & O ENTERPRISES, INC., Thomas Carter, Jack O'Neil, The Shelburne Co., A.G. Busch, Inc., Bruce Creager, Richard Wharton, Richard Kinzalow, Roy Thomas, Inc., Roy Jackson, Thomas Fogarty, Margaret Groves, Texaco, Inc., Defendants.**

**No. 84 C 10129.**

United States District Court, N.D. Illinois, E.D.

March 29, 1985.

Eugene F. Friedman, Eugene F. Friedman, Ltd., Chicago, Ill., for plaintiff.

Robert M. Tarnoff, Daniel E. Beederman, Schoenberg, Fisher & Newman, Ltd., Chicago, Ill., for defendants A.G. Busch Inc., Bruce Creager, Richard Wharton, and Richard Kinzalow.

Marvin A. Tenenbaum, M. Marshall Seeder, Alexander, Unikel, Bloom, Zalewa & Tenenbaum, Ltd., Chicago, Ill., for defendants C & O Enterprises, Inc. and Thomas Carter.

David W. Rosenberg, Brown, Dashow & Doran, Chicago, Ill., for defendants Roy Thomas, Inc., Roy Jackson, Thomas Fogarty, and Margaret Groves.

Thomas A. Reynolds, III, Winston & Strawn, Chicago, Ill., for defendant Texaco, Inc.

## MEMORANDUM ORDER

BUA, District Judge.

This Memorandum Order is entered pursuant to the Court's Order dated March 26, 1985. Before the Court are the following motions filed by the plaintiff: (1) motion to reinstate the present action; (2) motion for declaration that defendants have breached the settlement agreement; and (3) motion for temporary restraining order or, alternately, preliminary injunction. Also pending is defendant C & O Enterprises' motion for an order establishing escrow account. For the reasons stated below, plaintiff's motion to reinstate the present action is denied; plaintiff's motion for temporary restraining order or, alternately, preliminary injunction is denied. Plaintiff's motion for declaration that defendants have breached the settlement agreement will be considered as a motion to enforce the settlement agreement. Defendants are ordered to respond to the motion to enforce settlement as set forth below. Finally, defendant C & O Enterprises' motion for an order establishing escrow is denied.

## I. FACTS

After a lengthy pretrial conference on December 20, 1984, this cause was dismissed as settled between all the parties. The Court retained jurisdiction to enforce the settlement. Order of Dismissal, 84 C 10129, Dec. 20, 1984. Although neither a settlement agreement nor consent judgment has been submitted to the Court, the terms of the settlement agreement were read into the record by the attorneys on December 20, 1984 and transcribed by the court reporter.

In relevant part, the terms of the settlement agreement may be summarized as follows:

(1) "The defendant C & O Enterprises, Inc. ["C & O"] will purchase 16,000 car starters with the name DASH–GO on the starters from the plaintiff [Kapco Mfg. Co., Inc. ("Kapco")]. [C & O] will then sell 30,000 [car starters (assuming sufficient orders)] with the name DASH–GO manufactured by defendant A.G. Busch, Inc. ("Busch"). Thereafter, "with respect to any programs ... initiated prior to February 1, 1985, [C & O] will pur-

chase any car starters with the name DASH–GO on a $^{50}/_{50}$ basis from [defendant A.G. Busch, Inc. ("Busch") and Kapco]."

(2) C & O and its officers and directors agree to "quit claim all rights, title, and interest to the name DASH–GO to [Kapco]."

(3) "[A]fter February 1, 1985, [C & O] will initiate no programs and will not use in any new programs the name DASH–GO for any car starters that [C & O] sells." C & O, however, will be able "to use the name DASH–GO" for programs initiated prior to February 1, 1985, pursuant to the purchasing plan outlined in paragraph (1), above.

(4) "Kapco agrees that it will honor all warranties relating to the car starters under the name DASH–GO that it produces for C & O Enterprises." Kapco "will refurbish at its cost and expense any units that are returned for being defective."

(5) Kapco "will provide a reasonable notice of ... any request for returns that it receives."

(6) "Kapco agrees that it will honor all warranties relating to the car starters under the name DASH–GO that it produces for C & O Enterprises."

(7) Kapco "will ship within seven days of order" except for car starters ordered under the 50/50 program (see ¶ 1, above), which Kapco will ship within 14 days.

(8) Kapco shall receive payment, by check, "on shipment within three days." The "grouping of orders" shall be "commercially reasonable."

(9) This cause will be dismissed "with prejudice of all claims and counterclaims that are raised by any parties in this litigation. . . ."

(10) The parties "will enter into a settlement agreement that will include a provision that will provide that the Court will retain continuing jurisdiction over ... all of the parties with respect to the enforcement of all of the terms of the settlement agreement."

(11) C & O and Kapco will submit a "consent judgment ... setting forth the terms of the settlement agreement [between Kapco, its officers, and C & O]."

(12) Busch agrees "to pay the sum of $950 to Kapco in return for which [a suit between Busch and Kapco pending in the Circuit Court of Cook County] will be dismissed with prejudice." The payment by Busch "will be no admission of liability by any part."

(13) Copies of "all purchaser orders" shall be exchanged between the parties to ensure compliance with the settlement agreement.

Transcript of Proceedings, 84 C 10129, Dec. 20, 1984, pp. 1–12.

On February 15, 1984, plaintiff filed three motions: (1) a motion to reinstate the present action; (2) a motion for declaration that defendants have breached the settlement agreement; and (3) a motion for temporary restraining order or, alternately, preliminary injunction. Plaintiff alleges that defendants have materially breached the December 20 settlement agreement in several respects. First, plaintiff alleges that defendants have failed to sell 16,000 Kapco DASH–GO units and, instead, defendants have sold car starters under the name DASH–GO pursuant to programs initiated before February 1, 1985 which were manufactured by defendants Roy Thomas, Inc. and Busch. Plaintiff's Motion, filed Feb. 15, 1985, at 3–5. Second, plaintiff alleges that C & O and Busch have failed to exchange purchase orders for sales of car starters after December 20, 1984. Third, plaintiff alleges that C & O has initiated new advertising programs utilizing the name DASH–GO and a picture of Kapco's product after February 1, 1985. Fourth, plaintiff alleges that C & O has failed to quit claim its claim of ownership of the name DASH–GO to Kapco. Finally, plaintiff alleges that Busch has failed to pay Kapco $950 to settle the state court suit. Plaintiff's Reply Memorandum, filed March 15, 1985, at 4 and 14.

## II.  DISCUSSION

### A.  *Motions to Reinstate and for Injunctive Relief*

Plaintiff argues that under *Warner v. Rossignol*, 513 F.2d 678 (1st Cir.1975), the Court should vacate the dismissal order and allow plaintiff to proceed on the merits of the complaint.  In *Warner*, the court (applying Maine law) held that when a defendant repudiates or commits a material breach of a settlement agreement, the plaintiff may elect either to sue to enforce the settlement or "press forward upon the original cause."  *Id.* at 683.  In *Warner*, however, the court viewed the "settlement agreement" as an "informal agreement ... between lawyers" and not as a "final substitute for plaintiff's pending action."  *Id.* at 682.  In this case, the December 20, 1985 settlement was not an "informal agreement between lawyers," but rather a final resolution of "all claims and counterclaims ... raised by any parties in the litigation."  Transcript of Proceedings, 84 C 10129, Dec. 20, 1984, at 6.

Furthermore, unlike in *Warner*, defendants here have neither repudiated nor materially breached the December 20, 1984 settlement.  In *Warner*, the plaintiff failed to receive $6,000 from the defendant, which was to be payment in full for all of ·the plaintiff's claims.  On that basis, the court held that the defendant had either repudiated or materially breached the settlement agreement.  The court reasoned that a plaintiff, "who believed he was surrendering a lawsuit for $6,000 cash in hand," need not be bound to the original settlement when "he in fact surrendered it only for an empty promise of $6,000."  *Id.* at 683.

In this case, Kapco has received more than an "empty promise" of cash in exchange for surrendering its lawsuit on December 20, 1984.  First, Kapco admits that, between December 20, 1984 and March 15, 1985, 9,636 Kapco car starting cord sets were ordered by C & O.  Affidavit of Kenneth L. Rubel, dated March 15, 1985, at ¶¶ 33 and 34.  C & O states that, as of March 25, 1985, over 11,000 DASH–GO units were ordered by C & O from Kapco.

Defendants' Sur-Reply, filed March 25, 1985, at 2.  In any event, plaintiff clearly did not receive an "empty promise" on December 20, 1984 from C & O that Kapco units would be ordered.  Kapco's real complaint is that C & O is apparently not honoring its promise to purchase the first 16,000 units from Kapco.  Although this allegation, if true, would constitute a breach of the settlement agreement (see discussion *infra*, at 257), it does not constitute a "material breach" which would allow plaintiff to reinstate its case under *Warner*.

Second, plaintiff's allegation that defendants have initiated new advertising programs under the name DASH–GO does not warrant reinstating the case.  Although this allegation, if true, would warrant immediate injunctive relief from the Court, plaintiff has simply failed to substantiate its allegation with any evidence.  The Rubel affidavit dated March 15, 1985, states that in January, 1985 a person received an advertisement for a DASH–GO car starter cord manufactured by Busch.  In light of the fact that the person received the advertisement in January, 1985, it is impossible to infer that the advertisement was initiated after February 1, 1985 in violation of the settlement agreement.  The Friedman and Craig affidavits simply state that C & O's attorney told them mailings were initiated after February 1, a charge which C & O's attorney denies.  The Rubel affidavit dated February 12, 1985, states that, on January 25, 1985, Rubel's wife received an advertisement for DASH–GO from Amoco Oil which consisted of a car starter manufactured by defendant Roy Thomas, Inc.  Again, this affidavit does not support plaintiff's charge that C & O has initiated DASH–GO programs after February 1, 1985.  Since plaintiff has presented no evidence that C & O is utilizing the name DASH–GO in any programs initiated after February 1, 1985, the Court will not allow this conclusory allegation to allow reinstatement of the original complaint.

Neither do plaintiff's remaining allegations warrant reinstatement of the case.

The failure of defendants to provide Kapco with purchase orders can be cured by a motion to enforce settlement. Similarly, C & O's failure to quit claim its rights in the name DASH–GO can be cured by a motion to enforce settlement. For all of these reasons, plaintiff's motions to reinstate the case and for injunctive relief are denied.

### B. *Motion to Enforce Settlement*

Although the Court declines to hold that plaintiff's allegations of breach of the settlement justify reinstating the merits of the case under *Warner*, plaintiff's allegations are clearly not insubstantial. Plaintiff may be entitled to substantial damages and possibly future injunctive relief based upon the terms of the December 20, 1984 settlement agreement.

The Court rejects defendants' argument that the December 20 settlement agreement allowed C & O to "sell off" its remaining inventory of Busch units before it ordered 16,000 Kapco units. The terms of the December 20 settlement agreement unambiguously provide that "defendant, C & O Enterprises, Inc., *will* purchase 16,000 car starters ... from the plaintiff ... *then* sell 30,000 ... by the defendant, A.G. Busch ... and *then* ... $50/50$ from Busch and Kapco." Transcript of Proceedings, December 20, 1984, at 3. If C & O had desired to permit an undesignated number of Busch sales before the 16,000 Kapco sales, such a provision should have been made explicit. In the absence of such a statement, the Court must interpret the settlement as it was reduced to writing by the court reporter of December 20, 1984. The Court interprets the agreement to mean that C & O was required to fill the first 16,000 orders after December 20, 1984 with Kapco products.

In light of plaintiff's allegations of defendants' breach of the December 20, 1984 settlement agreement, the following schedule shall be maintained to ensure all parties' compliance with their agreement:

(1) Plaintiff and defendants shall reduce to writing, within 30 days of entry of this order, the terms of the settlement agreement entered on the record December 20, 1984. If the parties are unable to agree upon the terms of the settlement within 30 days, the Court will consider the December 20, 1984 transcript as the final settlement agreement between the parties.

(2) Kapco and C & O shall, within 30 days of entry of this order, submit the Consent Judgment provided by the December 20 settlement. The Consent Judgment should provide all terms of the settlement between Kapco and C & O including, but not limited to, use of the DASH–GO name, future purchasing requirements, procedures for monitoring compliance with the Consent Judgment and settlement agreement, appropriate sanctions for either parties' noncompliance, and the continuing jurisdiction of the Court to ensure the parties' compliance. If Kapco and C & O fail to submit a Consent Judgment within 30 days, the Court will enter an appropriate judgment order to ensure future compliance with the December 20, 1984 settlement agreement.

(3) All defendants shall, within 30 days of entry of this order, submit to Kapco a verified and detailed accounting of all orders and sales of car starting cord sets from December 21, 1984 to the date the accounting is prepared. Plaintiff may apply for further periodic accounting with leave of Court. Plaintiff may submit a motion for summary judgment on damages, if any, within 10 days of its receipt of the accounting.

(4) Any party may, with leave of Court, initiate appropriate discovery under Ill.Rev. Stat., ch. 110, ¶ 2–1402 to ensure compliance with the settlement agreement.

(5) C & O's motion for an order establishing escrow is denied.

(6) All parties shall bear their own fees and costs on this motion.

IT IS SO ORDERED.