UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 99-30885

JOHN TRASK,

Plaintiff-Appellee/Cross-Appellant,

VERSUS

METROCALL, INC., formerly known as
A+ NETWORK, INC.,

Defendant-Appellant/Cross-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

(96-CV-3568-B)

March 26, 2001

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

**I.**

Appellant Metrocall, Inc. (formerly known as A+ Network,
Inc.),[1] seeks vacatur of the judgment entered by the district

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]A+ and Metrocall may be referred to interchangeably or
collectively as "Metrocall."

court on a jury's verdict in favor of Appellee John Trask. In the underlying lawsuit, Trask alleged that Metrocall failed to pay him wages due pursuant to a compensation plan under which he was to receive a fixed commission per sale of Metrocall's pagers.

Because we find that Metrocall's notice of appeal was not timely filed, we dismiss its appeal for lack of jurisdiction. Likewise, we dismiss Trask's cross-appeal insofar as it seeks relief as to the merits of the district court's judgment. With respect to the sole issue timely raised in Trask's notice of appeal, that is, a challenge to the quantum of the district court's award of attorney fees, we affirm the amended judgment as it relates to the award of attorney fees.

## II.

John Trask first worked for Metrocall's predecessor in interest, A+ Communications, from January 1993 until October 1994. Trask sold A+'s paging services in New Orleans. He was trained regarding A+'s products and services line and was also trained regarding the sales representative commission structure. Trask was also trained that the standard commission was not available for paging services sold to large commercial accounts, to expectant parents, or under state contracts. Specifically, Trask was trained that sales representatives would receive a maximum of $3.00 per pager on state contract accounts.

Trask left A+ in 1994 on good terms, but he was subsequently

2

contacted by A+ again and asked to return to A+ in its Baton Rouge store location as a sales representative with the possibility of a promotion to sales manager. Trask returned to A+ in January 1995, and he began to seek out new clients immediately. He worked closely with his friend, Wayne Chaisson, who was his supervisor in the Baton Rouge office.

Trask learned of the possibility that Louisiana State University ("LSU") was interested in buying pagers. He inquired with LSU's director of communications, Gus Gonzales, who informed him that Trask would need approval from the Office of Telecommunications Management ("OTM"). Trask learned from OTM's director, Jack Kelly, that the State of Louisiana was going to be opening up bids to select a vendor to provide the State's paging needs on a statewide basis. Trask got a copy of the Request for Proposal ("RFP") in advance of the competition, and he worked to gain the trust and favor of Kelly. Trask and Chaisson formulated A+'s bid for the State account. Trask contends that he remained in constant contact with Kelly and the OTM in order to strengthen A+'s chances of winning the bid. Shortly after the bid was submitted, A+ merged with Network USA, Inc. to form A+ Network, Inc.

On November 20, 1995, A+ was notified that it would be awarded the Louisiana contract contingent upon A+'s posting a $750,000 performance bond. Trask made the bond arrangements, and on December 15, 1995, OTM awarded the contract to A+, making it the exclusive provider of digital pagers statewide to the State and all

3

of its agencies.  Trask contends that he was solely responsible for A+ receiving the State account, but Metrocall notes that A+ had already worked with the State of Louisiana in a public bid that was lost to another competitor, and that other A+ offices and Network USA (pre-merger with A+) had considered and been invited to bid for the State account.

Beginning immediately after the contract was awarded, the State began ordering pagers.  By the end of January 1996, A+ had already delivered 1,000 pagers to the State.  As the account representative, Trask delivered the pagers.  By July 15, 1996, the State had ordered 12,200 pagers.  The number had reached 13,300 by July of the following year, 1997.  Trask alleges that at all times, he remained the contact person with the OTM and was designated as the sales representative on the account.  However, Metrocall notes that Mr. Kelly, the State's representative, testified that beginning in January 1996, the account was serviced by A+'s Pensacola, Florida office (its corporate headquarters), and that after February 1996, activation of pagers and all other issues were addressed by the Pensacola office.

Trask contends that he should have been compensated at the standard commission for each pager supplied under the State contract.  Chaisson initially negotiated for and A+ agreed to pay Trask $4,741 as commission for the State account.  Trask accepted the money without formal objection in February 1996.  Trask testified that he was upset by this low amount of commission, but

4

he never spoke to anyone higher than Chaisson in A+'s chain of command about his dissatisfaction.

Indeed, in April 1996, having already received his $4,741 commission, Trask interviewed for a sales manager position. During the interviewing process, Trask never even mentioned, let alone protested his alleged dispute as to the amount of commission he received for the Louisiana state account. In May 1996, Trask was awarded the Baton Rouge sales manager job and received a substantial pay raise. Five months later, on October 25, 1996, Trask left A+, and eight days later, after having already started a new sales job in the medical products field, he filed the complaint giving rise to this appeal.

On November 1, 1996, Trask filed his complaint against A+ Network under Louisiana's Unpaid Wage Statute. He alleged that A+ failed to pay him under the 1995 compensation plan for his efforts in securing and servicing the State account.

Trask contends that a December 1995 compensation plan governs the pagers at issue since the State contract was officially awarded on December 15, 1995. Trask contends that the 1995 compensation plan, and all of the relevant company literature, place no limitation on a sales representative's commission on a state bid account. Nor do any of the pertinent documents prevent an employee from earning commission after termination or resignation. According to the 1995 plan, a sales representative's commission was determined by using a multiplier with each sold pager's first

5

month's revenue. The applicable multiplier in this case was 2.25 (225%). According to Trask, A+'s policy was that if there was to be a deviation from the 1995 plan, the amount of the commission was to be negotiated between the company and the sales representative "prior to" submission of the bid. It is undisputed that no one discussed a reduced commission on the State account with Trask until after December 1995. Metrocall contends that its compensation plan never changed from the time Trask was initially trained as to the $3.00 per state pager limitation.

On August 10, 1998, the district court entered a pretrial order that the issue of attorney fees was to be severed from the damages issues and would be tried before the bench. On August 10-13, 1998, Trask's case was tried to a jury which ultimately rendered a verdict in favor of Trask, awarding $164,242.98 in damages. The jury concluded that Metrocall acted arbitrarily and in bad faith, but in assessing "penalty wages" based thereupon, the jury filled in the interrogatory verdict form with a "$0.00" per pager penalty award. Also, according to the jury's verdict, Trask's suit was "well-founded" such that he was entitled to an award for attorney fees. Concluding that the jury marked "$0.00" in the blank for per-pager penalty wages because it had included its penalty-wage award in the lump-sum award of $164,242, the district court then entered a judgment in accordance with the jury's verdict on August 18, 1998. The district court's August 18th judgment specifically included an award of attorney fees,

6

legal interest, and costs but did not fix the amount of these awards.

Metrocall moved for a judgment notwithstanding the verdict, for a new trial, or, in the alternative, for remittitur. Trask moved for a new trial on the issue of the jury's failure to award a specific and discreet amount for penalty wages. All post-trial motions for a new trial were denied on March 5, 1999, some six and one-half months after the initial judgment.

Metrocall filed its first notice of appeal in the district court on April 7, 1999, thirty-two days after the district court had entered its order denying the parties' respective motions for a new trial. In its notice of appeal, Metrocall referred to the district court's August 18, 1998, judgment as being final. However, on April 9, 1999, Metrocall moved to withdraw its previously filed notice of appeal, and it filed a simultaneous motion for an extension of time within which to file its notice of appeal. In its motion for an extension, Metrocall cited excusable neglect as grounds for relief from its otherwise untimely notice of appeal. Specifically, Metrocall cited the alleged fact that its counsel had inadvertently buried the district court's order denying the motions for new trial under paperwork on his desk. Metrocall urged the district court to excuse its admittedly "untimely" notice of appeal based upon this excusable neglect.

On April 28, 1999, Metrocall moved for entry of a final judgment, suggesting for the first time that its previous notice of

7

appeal had not been untimely, but instead was simply premature because the district court had yet to rule on Trask's outstanding request for attorney fees. According to Metrocall's motion, without a ruling from the district court as to the quantum of attorney fees, no final judgment had been entered from which an appeal could be taken. The district court granted the motion to withdraw the previously filed notice of appeal and set a hearing on remaining matters for May 26, 1999.

Trask had moved for attorney fees on August 27, 1998, and on May 26, 1999, the district court awarded $56,729.60 in fees (80% of the amount requested). The court reasoned that the reduced amount was based on excessive time records. The district court awarded Trask all of his costs, $7,459.99, and it also awarded Trask interest on the principal judgment.

On July 27, 1999, nearly one year after first entering judgment in favor of Trask, the district court entered an amended judgment reflecting the award of fees and costs. The district court noted that as a result of entering the amended judgment, all other pending motions, including Metrocall's motion for an extension of time to file a notice of appeal, were moot.

Metrocall filed its second notice of appeal on August 10, 1999. Metrocall challenged the jury's verdict on several grounds, as well as the district court's denial of its motions for judgment notwithstanding the verdict and for new trial or remittitur. Trask filed his notice of appeal on August 12, 1999. Trask challenged

8

the jury's failure to award a quantum of penalty wages after it found that he was entitled to such wages, and he also challenged the district court's amended judgment awarding only 80% of the attorney fees requested.

### III.

As an initial matter, we must address whether we have appellate jurisdiction over this appeal. Trask challenges our jurisdiction over Metrocall's appeal arguing that Metrocall failed to timely file a notice of appeal within the thirty days following the district court's denial of the parties' respective motions for a new trial, i.e., the date upon which the district court's previously entered August 18, 1998, judgment became final.

The district court entered a judgment on the jury's verdict on August 18, 1998, and that judgment awarded attorney fees to Trask. According to the jury's verdict, Trask's case was "well founded" and under Louisiana Revised Statutes 23:632, he was therefore entitled to an award of attorney fees. *See **Brown v. Navarre Chevrolet, Inc.***, 610 So. 2d 165, 172 (La. App. 3d Cir. 1992). All that was left for the court to do was to determine the amount of fees to be awarded. On March 5, 1999, the district court denied the parties' respective motions for a new trial. However, it was not until May 27, 1999, that the district court entered an order specifying the amount of attorney fees Trask was entitled to. And it was not until July 27, 1999, that the district court entered an

9

amended judgment reflecting the quantum of attorney fees, costs, and interest which had been previously awarded.

Trask argues that pursuant to Rule 4 of the Federal Rules of Appellate Procedure, each party had until April 5, 1999, to file its notice of appeal on the merits (that is, thirty days from the date the motions for a new trial were denied). Two days after the deadline, on April 7, 1999, Metrocall filed its notice of appeal. On April 9, 1999, Metrocall moved to withdraw its untimely notice of appeal and filed a motion for an extension of time to file its notice of appeal. In its motion for an extension, Metrocall conceded that the August 18, 1998, judgment was final and appealable. However, near the end of April, Metrocall filed a motion for entry of a final judgment alleging for the first time that after reviewing the record, it determined that no final judgment from which an appeal could be taken had been entered and that, therefore, its April 7th notice of appeal was premature, not untimely.

Metrocall reasons that the August 18, 1998, judgment was not final because it had not resolved the issue of attorney fees requested by Trask in his pending motion. According to Metrocall, the district court's order and reasons of March 5, 1999, did not suffice to resolve all of the claims in the case, and the confusion created thereby amounted to "excusable neglect" for Metrocall not timely filing the notice of appeal. Ultimately, on July 27, 1999, the district court entered an amended judgment reflecting its May

10

27, 1999, order granting a specific quantum of attorney fees and costs.

In reply, Trask argues that the August 18, 1999, judgment did award attorney fees, costs, and interest and that when the district court denied the motions for new trial, those collateral issues were not unresolved. Specifically, the district court's judgment stated as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED that there be a JUDGMENT in favor of plaintiff, John Trask, and against defendants, A+ Network, Inc. and Metrocall, Inc., in the amount of $164,242.98, plus legal interest, costs and reasonable attorney fees.

Additionally, the district court's March 5, 1999, order denying the parties' respective motions for a new trial specifically acknowledged that the jury's verdict, which it was sustaining, included a finding that the suit was "well founded" and that Trask was entitled to an award of attorney fees as a matter of law.

We have repeatedly acknowledged that under Rule 58, an order denying a motion for new trial, such as that entered by the district court in this case on March 5, 1999, is sufficient as a final order in that it disposes of post-trial motions, especially where the parties treat it as a final and appealable order. *See, e.g., InterFirst Bank Dallas v. Federal Deposit Ins. Corp.*, 808 F.2d 1105, 1109 (5th Cir. 1987). When Metrocall originally filed its first notice of appeal, it acknowledged the appealability of

11

the district court's judgment, and again in its motion for an extension of time, it acknowledged that the August 18, 1998, judgment was final and appealable. Only well after expiration of the thirty-day period following the district court's denial of the motions for new trial did it become Metrocall's position that the March 5, 1999, order was insufficient to constitute a final and appealable order, thus excusing Metrocall from having to file its notice of appeal before the attorney fees issue was completely resolved.

We have consistently held that the issue of attorney fees is collateral to the merits, and a final judgment as to attorney fees may be appealed separately from an appeal on the merits. *See Deus v. Allstate Ins.*, 15 F.3d 506, 522 (5th Cir. 1994). Furthermore, an issue as to the quantity of unresolved attorney fees does not prevent an appeal of a judgment from becoming final as to the merits under the rule allowing for appeals from final judgments. *See Noble Drilling, Inc. v. Davis*, 64 F.3d 191, 193-94 (5th Cir. 1995) (citing *Budinich v. Becton Dickinson & Co.*, 108 S. Ct. 1717, 1722 (1988) ("[A]n unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final")); *see also DeLoach v. Delchamps, Inc.*, 897 F.2d 815 826 (5th Cir. 1990) ("It is clear that a judgment on the merits determining both liability and damages is final even though the attorney's fees issue has been left open . . . [a]dditionally,

12

attorney's fees are considered collateral to the merits, so that final judgments as to attorney's fees can be appealed separately from the 'merits' judgment.") (citing *Budinich*, 108 S. Ct. at 1720).

Likewise, we have consistently held that a judgment on the merits becomes final for the purposes of appeal when the district court denies any timely filed motions for judgment notwithstanding the verdict or for a new trial. *See First Interstate Bank v. Interfund Corp.*, 924 F.2d 588, 593 (5th Cir. 1991) (finding that judgment became final when district court denied motion for judgment notwithstanding the verdict or alternatively for a new trial); *see also Melear v. Spears*, 862 F.2d 1177, 1182 (5th Cir. 1989). Here, the judgment became final for purposes of appeal when the district court denied the motions for a new trial on March 5, 1999. Thus, Metrocall's first notice of appeal, filed more than thirty days after denial of the motions for a new trial, was untimely, and we therefore lack appellate jurisdiction over its appeal. *See Smith v. Smith*, 145 F.3d 335, 339 (5th Cir. 1998) ("The filing of a timely notice of appeal is mandatory and jurisdictional").

Metrocall relies on cases in which the Ninth and First Circuits held that a judgment was not final when it had yet to address the bifurcated issues of "back pay and attorney fees." *See Brown v. United States Postal Svc.*, 860 F.2d 884 (9th Cir. 1988);

13

*Warner v. Rossingol*, 513 F.2d 678 (1st Cir. 1975). These cases are easily distinguished by the fact that back pay entitlement is a merits-based determination, unlike the issue of the appropriate quantum of attorney fees, which we have repeatedly held is collateral.

Metrocall also attempts to rely on the "confusion" created by the district court's failure to rule on the quantum of attorney fees, interest, and costs at the same time it denied the motions for a new trial and the notion that excusable neglect should be found for its untimely notice of appeal based on such "confusion." We find these contentions to be without merit. By Metrocall's own admission, the "confusion" as to whether an appealable final judgment had been entered only developed well after expiration of the thirty-day period following denial of the motions for a new trial. Indeed, up until the time it "discovered" its "confusion," Metrocall had consistently conceded that the August 18, 1998, judgment became final upon the denial of the motions for a new trial.

Metrocall alternatively argues that, in his post-trial motion for attorney fees, Trask sought for the first time an award of pre-judgment interest. This, according to Metrocall, amounted to a Rule 59(e) motion to alter or amend the judgment, and no appeal could be taken from the judgment until such a motion was resolved. According to Metrocall, it was not until the district court awarded

14

fees and interest on May 27, 1999, and entered its amended judgment on July 27, 1999, in accordance therewith, that an appeal could be undertaken. Therefore, Metrocall argues that its appeal from the district court's amended judgment, as the only final and appealable judgment, is timely. We disagree.

Trask's motion for attorney fees was not one seeking to amend or alter the August 18, 1998, judgment. That judgment specifically stated that it was awarding Trask his damages, as well as his reasonable attorney fees, costs, and "legal interest," and it reserved only a determination of the exact quantum of fees, costs, and interest for another day. Accordingly, Metrocall did not need to wait until the district court awarded a specific quantum of fees, costs, and interest before it could file its appeal from the merits judgment. As noted above, the merits judgment became final when the district court denied the parties' respective motions for a new trial.

For the same reasons that Metrocall was required to file its notice of appeal on the merits within thirty days of the denial of the new trial motions, so too was Trask. Rather than filing a separate notice of appeal on the penalty wages issue before April 5, 1999, Trask waited to include that merits-based challenge to the verdict in his notice of appeal filed on August 12, 1999. Accordingly, Trask's failure to file a notice of appeal on the merits issue of the verdict's inconsistency regarding the award of penalty wages deprives us of jurisdiction to review the judgment

15

with respect to that issue.

## IV.

The only issue for which a timely notice of appeal has been filed in this case is Trask's challenge to the district court's determination of the amount of attorney fees. Trask filed his notice of appeal on August 12, 1999, within thirty days of the district court's July 27, 1999, amended judgment incorporating the award of attorney fees, costs, and interest ordered on May 26, 1999.

Trask contends that the district court erred in failing to award him 100% of the attorney fees requested by his counsel. The district court justified its 20% reduction in the amount of fees requested due to an excessive number of hours spent by Trask's counsel receiving calls from Trask himself, along with excessive time charged for conferences, organizing the files, and research, among other things.

Trask accuses the district court of "Monday-morning quarterbacking." However, as Metrocall properly points out, it is clear that the district court thoughtfully and thoroughly considered the itemized request for fees. Under Louisiana law, the district court had great discretion in determining what portions of a fee request to honor and which to reject. *See* **Blanton v. Malkem Inter. Corp.**, 628 So. 2d 178, 183 (La. App. 2d Cir. 1993). Having carefully reviewed the district court's order awarding fees, as

16

well as the record of this case and the parties' briefing with the benefit of oral argument, we conclude that no reversible error by way of a specific showing of an abuse of the district court's broad discretion has been shown. We further find that the district court properly relied upon and applied the appropriate legal precedent in evaluating the propriety of the fees requested. Accordingly, we affirm the district court's amended judgment insofar as it awards Trask 80% of the attorney fees requested.

**V.**

Based upon all of the foregoing considerations, we DISMISS Metrocall's appeal and Trask's appeal insofar as it challenges the jury's verdict, and we affirm the district court's amended judgment with respect to its award of attorney fees.

**DISMISSED** in part; **AFFIRMED** in part.

17