886 F.2d 1485
 14 Fed.R.Serv.3d 1332
 KAPCO MANUFACTURING CO., INC., Plaintiff,
v.
C & O ENTERPRISES, INC., Thomas Carter, Jack O'Neil, the
Shelburne Co., A.G. Busch, Inc., Bruce Creger, Richard
Wharton, Richard Kinzalow, Roy Thomas, Inc., Roy Jackson,
Thomas Fogarty, Margaret Groves, Texaco, Inc., Amoco Oil
Co., Inc., and Programmers Investment Corp., Defendants-Appellees.
Appeal of Eugene F. FRIEDMAN.
 No. 88-2023.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 25, 1989.
Decided Aug. 11, 1989*.
Opinion Oct. 13, 1989.
 
 Eugene F. Friedman, Robert M. Tarnoff, Daniel E. Beederman, Schoenberg, Fisher & Newman, Richard M. Fogel, Schiller, Klein & Steinberg, Chicago, Ill., for plaintiff.
 Matthew J. Iverson, Abramson & Fox, Chicago, Ill., Jesse J. Holland, McCoy, Holland & Seavy, Medinah, Ill., Robert A. Lewinthal, Lewinthal & Sklamberg, Glenview, Ill., Marvin A. Tenenbaum, Alexander, Unikel, Bloom, Zalewa & Tenenbaum, Chicago, Ill., for defendants-appellees.
 Before WOOD, Jr., CUDAHY and EASTERBROOK, Circuit Judges.
 PER CURIAM.
 
 
 1
 Eugene F. Friedman appeals from the district court's order imposing sanctions against him pursuant to 28 U.S.C. Sec. 1927 and Federal Rule of Civil Procedure 11. The district court's order required Kapco Manufacturing Company ("Kapco") and its attorney, Friedman, jointly and severally, to pay the defendants $46,780.07 in attorneys' fees.[1] Friedman contends that the proceedings below did not warrant the imposition of sanctions, and further, even if sanctions were appropriate, the district court abused its discretion in awarding this amount. The district court's order imposing sanctions was proper, and, with the exception of a remand on one issue, is affirmed.I. Facts and Procedural History
 
 
 2
 Kapco, with Friedman acting as its counsel, filed a complaint against the numerous defendants,[2] alleging that the defendants had misappropriated Kapco's right to manufacture and market a car battery charger known as a "Dash-Go." The case was assigned to Judge Ilana Rovner of the United States District Court for the Northern District of Illinois; within one month of its filing Judge Rovner was able to have the parties negotiate a settlement agreement. During the lengthy pretrial conference from which the settlement agreement evolved, the attorneys for the parties read into the record the terms of the settlement agreement. The district judge thereupon dismissed the case but retained jurisdiction to enforce the settlement agreement. The attorneys were instructed to submit a consent judgment setting forth in a written document the terms of the settlement. This normally would have been the end of the matter. But what followed was a plethora of motions filed by Kapco, Kapco's second filing of a complaint regarding these facts, and four published opinions--three in the district court and one in this court. These subsequent actions by Kapco and Friedman form the basis of the district court's decision to impose sanctions.
 
 
 3
 Following the settlement pretrial conference, Kapco and Friedman refused to cooperate with defendants' counsel in drafting the settlement agreement and consent judgment. Instead, less than two months later Kapco returned to court alleging that the defendants had breached the settlement agreement. Kapco sought an order reinstating the case, an order declaring that the defendants had breached the agreement, and an order restraining or enjoining the defendants from further breach of the agreement. Judge Bua, who handled the matter in Judge Rovner's absence, ruled that the dispute between the parties did not warrant reinstatement of the case or injunctive relief at that time and stated that the matter could be resolved by a motion to enforce the settlement agreement. He therefore refused to reinstate the case and ordered the parties to submit a consent judgment as previously ordered. Judge Bua stated that, in the event the parties failed to comply with this order, the transcript of the pretrial conference would serve as the final settlement agreement. Judge Bua ordered the defendants to provide Kapco with an accounting of their sales relative to the dispute and instructed Kapco that after receiving this accounting it could submit a motion for summary judgment on the issue of damages. Kapco was also instructed that with leave of court it could engage in appropriate discovery to ensure compliance with the settlement agreement. Kapco Mfg. Co. v. C & O Enters., Inc., 605 F.Supp. 253, 257 (N.D.Ill.1985).
 
 
 4
 Despite these instructions by the district court, Kapco failed to cooperate with the defendants in submitting a consent judgment, failed to seek enforcement of the settlement agreement, and failed to bring a motion for summary judgment on the issue of damages caused by the purported breach. Instead, Kapco filed objections to the defendants' accountings (which the district court later determined were frivolous), filed a motion to take discovery from nonparties (which the district court later determined sought information not relevant to the dispute), and filed a motion for reconsideration of the order denying reinstatement of the case (which the district court summarily denied). In ruling on these motions, the district court again noted the failure of the parties to submit a final settlement agreement and therefore ordered that the transcript of the pretrial conference would serve as the final settlement agreement.
 
 
 5
 Still, a resolution was no closer at hand. A secondary skirmish erupted between one of the defendants, C & O Enterprises ("C & O"), and Kapco over a billing dispute involving approximately $1,600 to which C & O claimed it was entitled due to Kapco's failure to perform its obligations in the settlement agreement. Consequently, C & O filed a motion to compel Kapco to perform under the settlement agreement. At about this same time Kapco filed (1) an "Emergency Motion to Disqualify" C & O's counsel on the basis that Friedman's former secretary recently had been employed by an opposing counsel's law firm, and (2) a motion for reconsideration of the district court's order denying Kapco's request to take discovery from nonparties. While these motions were being briefed Kapco appealed the district court's order denying Kapco's motion for reinstatement of the case. This court dismissed Kapco's appeal for lack of jurisdiction, stating that the district court's order was interlocutory and in the absence of a final order no appellate jurisdiction existed. Kapco Mfg. Co. v. C & O Enters., 773 F.2d 151 (7th Cir.1985).
 
 
 6
 Kapco's next tack was to file another complaint in the district court which contained similar allegations as in the earlier complaint and requested relief for the defendants' alleged breach of the settlement agreement. Because this case was found to be related to the ongoing litigation, the case was assigned to Judge Rovner's docket. Kapco Mfg. Co. v. C & O Enters., 108 F.R.D. 55 (N.D.Ill.1985).[3] Judge Rovner then held several days of pretrial conferences attempting to resolve this litigation. When this failed, Judge Rovner set an evidentiary hearing on the motion to disqualify C & O's counsel and a hearing on the defendants' alleged breach of the settlement agreement and damages. Kapco offered no objection to the hearings until the day of the hearings. On that day Kapco filed a motion to hold the hearings in abeyance, claiming that the district court lacked jurisdiction. Kapco argued that although the court of appeals had dismissed its earlier appeal, no mandate had issued and thus the district court lacked jurisdiction. This court's order dismissing Kapco's appeal, however, clearly stated that jurisdiction never vested in the court of appeals but remained at all times with the district court. Accordingly, the district court denied Kapco's motion.
 
 
 7
 The hearings proceeded and the district court first determined that evidence failed to support Kapco's claim that opposing counsel should be disqualified. Kapco Mfg. Co. v. C & O Enters., Inc., 637 F.Supp. 1231 (N.D.Ill.1985). Next, the district court held a hearing on the issue of the alleged breach and damages. Also before the court were motions by the defendants to enforce the settlement agreement and to enjoin Kapco from instituting further filings related to the settlement agreement. The defendants requested sanctions (costs and fees) for their time spent in litigating this action.
 
 
 8
 The district court entered judgment for the defendants, finding, among other things,[4] that Kapco and Friedman "engaged repeatedly in duplicative and vexatious tactics fraught with bad faith in an attempt to unnecessarily prolong this litigation, to harass the defendants, and to drive them out of business." The district court concluded that Kapco and Friedman violated 28 U.S.C. Sec. 1927 and Rule 11 in four respects: (1) Kapco and Friedman filed numerous meritless motions (including motions to reconsider) and frequently falsely represented the need for emergency relief. (2) Kapco's president and Friedman engaged in correspondence with the defendants and opposing counsel that fell below acceptable standards and served only to harass the defendants and prolong the litigation. (3) The conduct of Kapco's president and Friedman at the hearings evidenced a disregard for an orderly and truthful resolution of the dispute. (4) Friedman's submissions to the court were lengthy, rambling, filled with invective, often recycled from earlier submissions, lacked in citations to authority, and filled with misrepresentations of fact and law.
 
 
 9
 The district court thereafter imposed sanctions against Kapco and Friedman, jointly and severally, in the amount of $46,780.07. This sum represented the cost and fees incurred by all defendants in defending the litigation, excluding, however, time and expenses incurred for the following: litigation during the period when Judge Rovner was absent from the bench and unable to monitor the case personally; settlement discussions; filings in the Seventh Circuit; and, the hearing on Kapco's motion to disqualify opposing counsel.
 
 II. Analysis
 
 10
 The district court imposed sanctions pursuant to both section 1927 and Federal Rule of Civil Procedure 11. Rule 11 and section 1927 overlap in their prohibition of conduct which is intended to impede and multiply the proceedings, spurning any attempt to seek a resolution of meritorious claims. The purpose of both Rule 11 and section 1927 is to deter frivolous litigation and abusive practices by attorneys, see Fred A. Smith Lumber Co. v. Edidin, 845 F.2d 750, 752 (7th Cir.1988), and to ensure that those who create unnecessary costs also bear them. In re TCI, 769 F.2d 441, 446 (7th Cir.1985).
 
 
 11
 Under 28 U.S.C. Sec. 1927 an attorney who "multiplies the proceedings ... unreasonably and vexatiously," may be ordered to satisfy personally the expenses caused by his conduct. Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223 (7th Cir.1984). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." In re TCI, 769 F.2d at 445 (citations omitted). The review of an order imposing sanctions under section 1927 is a deferential one, subject to the abuse of discretion standard. Walter v. Fiorenzo, 840 F.2d 427, 433 (7th Cir.1988). This court need only inquire whether any reasonable person could agree with the district court's sanction award. Id. at 433.
 
 
 12
 Rule 11 prohibits the filing of pleadings that are not reasonably based in the law or in fact and forbids the filing of pleadings that are interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increased cost of litigation. Brown v. Federation of State Medical Bds., 830 F.2d 1429, 1434 (7th Cir.1987). The language of Rule 11 is mandatory; if a district court concludes that a party or attorney filed a pleading or other document for an improper purpose, then the court must impose a sanction, which may require the payment of the reasonable expenses incurred because of the filing. Insurance Benefit Adm'rs, Inc. v. Martin, 871 F.2d 1354, 1357 (7th Cir.1989). The inquiry is one of "objective reasonableness under all the circumstances of the case." FDIC v. Tekfen Constr. & Installation Co., 847 F.2d 440, 442 (7th Cir.1988).
 
 
 13
 Our review of the district court's inquiry and decision on whether or not to impose sanctions is a deferential one; we must affirm the district court's judgment unless it is based on clear errors of fact or it is an abuse of discretion. Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928 (7th Cir.1989) (en banc).
 
 
 14
 Friedman presents four issues for review. The text of Friedman's brief does not follow these issues but raises numerous other points in a discursive fashion. Friedman asks the court to adopt a myopic view of the litigation before the district court and to find that his conduct in several isolated incidents did not warrant sanctions. For brevity, we address these incidents under general headings and in relation to the litigation as a whole.[5]A. Needlessly Multiplying the Proceedings with Frivolous Pleadings
 
 
 15
 Friedman first challenges the imposition of sanctions for the filing of the second complaint. Friedman contends that the first complaint was dismissed without prejudice and, pursuant to dictum in McCall-Bey v. Franzen, 777 F.2d 1178, 1185 (7th Cir.1985), he was entitled to seek reinstatement of the case or to file an additional complaint claiming breach of the settlement agreement. The defendants argue, however, that the case was dismissed with prejudice when Judge Bua entered his order making the transcript of the pretrial conference the final settlement agreement. Thus, defendants point out, Friedman filed a second complaint substantially similar to the initial complaint at a time when the district court had concluded litigation on those facts, save additional inquiry into a breach of the settlement agreement.
 
 
 16
 This court need not delve deeply into the procedural morass or into Friedman's questionable reading of McCall-Bey. The record sufficiently supports the district court's finding that Friedman filed the second complaint for the express purpose of avoiding the district court's order and shopping for a different forum. Friedman admits in his brief that the second complaint was filed to avoid the district court's denial of his motion to reinstate the first action. The second complaint sought damages for the alleged breach of the settlement agreement. Yet, the district court provided Friedman with specific instructions on how to proceed if Kapco desired to pursue these alleged damages. The district court ordered the defendants to submit accountings (which they did), authorized appropriate discovery into these alleged damages, and instructed Kapco that it could file a motion for summary judgment on the issue of damages. Friedman rejected these procedures which would have provided Kapco with a resolution of its claim and instead filed a motion to reconsider this ruling and, when this failed, an appeal of this denial. When this court dismissed the appeal for lack of jurisdiction Friedman was told that the district court proceedings were not final (a point which Friedman now recognizes) and he was instructed to proceed there. Despite this, Friedman filed a second complaint.
 
 
 17
 Friedman does not argue that Kapco had legitimate strategic reasons for seeking the reinstatement of the original lawsuit or by filing the second;[6] he merely claims that he was not prohibited from pursuing these actions. He argues that the district court's order did not require him to follow these suggested procedures. Thus, Kapco was entirely justified in acting as it did. However, this avoids the inquiry under Rule 11 and section 1927. The district court need only determine that the filings were improper--in this case, that they unnecessarily and vexatiously multiplied the proceedings. Given that the district court expressly stated procedures by which Kapco could expeditiously resolve its dispute, and that Friedman responded with a motion to reconsider, an appeal from the denial of this motion, and a second complaint (none of which, if successful, would have benefitted Kapco more than had it followed the procedures set forth by the district court), Friedman's conduct multiplied the proceedings unnecessarily and was clearly sanctionable.
 
 
 18
 These proceedings prolonged the litigation and constituted a war upon the defendants which Kapco and Friedman sought to expand to as many fronts as possible. Friedman practically boasts as much in detailing his philosophy of litigation in his briefs before the district court.
 
 
 19
 [S]erious litigation does amount to civilized bloodless war between the parties.... To maintain that this litigation, in particular, amounts to warfare merely states the obvious; it does not provide a showing that Kapco has asserted frivolous and baseless claims.
 
 
 20
 Rec. at 114, p. 8.
 
 
 21
 The district court was not required to find Kapco's claims frivolous and baseless (though it did) in order to find Friedman's conduct sanctionable. Therefore, Friedman's protestations that Kapco's claims had merit[7] are of no value where his actions unnecessarily prolonged the litigation for purposes of harassment.
 
 B. The Hearing on Damages
 
 22
 Friedman next contends that he should not be sanctioned for causing the hearing to be held on damages. He argues that he did not file any paper requesting this hearing but opposed the hearing. And, he notes, he presented substantial evidence at this hearing in support of Kapco's claims. According to Friedman, this precludes the imposition of sanctions. These arguments are disingenuous.
 
 
 23
 While Friedman may not have filed a document requesting this particular hearing, his numerous pleadings ostensibly sought an evidentiary hearing on damages flowing from the alleged breach of the settlement agreement. Friedman conceded in one of his briefs before the trial court that every pleading Kapco filed sought redress for the defendants' alleged breach of the settlement agreement. Friedman cannot now avoid his actions by claiming that because the court held a hearing in an attempt to dispose of Friedman's numerous filings he is not responsible.
 
 
 24
 Similarly, Friedman's claim that he opposed the hearing deserves little discussion. Friedman raised no objections to the hearing until the day of the hearing, at which time, for frivolous reasons, he filed his motion to hold the hearing in abeyance. Before this, Friedman offered no objection but filed Kapco's list of witnesses and a statement of damages. The district court did not seek to divine Friedman's intent in filing this frivolous motion but commented upon the incongruity of Friedman's actions and his professed desire in settlement conferences to end the squabbling. Whatever Friedman's intent, the filing of the frivolous motion was itself sanctionable and it is ironic that Friedman relies upon this filing, claiming that he should not be sanctioned in light of his efforts to forestall the hearing. Friedman's arguments that he was not responsible for the scheduling of this hearing are without merit.
 
 
 25
 Friedman's argument that he presented substantial evidence at this hearing similarly offers no absolution for his conduct, warding off sanctions. Friedman relies upon Colan v. Cutler-Hammer, Inc., 812 F.2d 357 (7th Cir.1987), adopting a district court's order where the district court, in a footnote, concluded that a plaintiff who presented evidence, but not enough to survive a motion for summary judgment, should not be sanctioned. Here, however, the district court commented that the only reason Kapco survived a motion to dismiss after the presentation of evidence was the district court's leniency in liberally construing the evidence as favorably to Kapco as possible. This scant evidence was quickly and easily refuted and hardly constituted the evidence referred to in Colan and similar cases.
 
 
 26
 Moreover, once the defendants presented their witnesses, the district court was better able to assess the credibility of Kapco's witnesses and conclude that Kapco presented no credible evidence in support of its claims. In light of this, Friedman can find no refuge in Colan or similar cases requiring that to stave off sanctions a party must present colorable arguments or some credible evidence.[8]
 
 C. The Hearing on the Disqualification
 
 27
 Friedman invites this court to review his conduct and the district court's decision relating to the hearing on his motion to disqualify one defendant's counsel. We must decline this invitation. The district court, finding that the entire litigation was permeated by Friedman's abuse of the judicial system, specifically excluded from the conduct for which it imposed sanctions that conduct relating to the motion to disqualify. Friedman's conduct in filing this motion and requesting a hearing was not material to the district court in imposing sanctions and is therefore similarly irrelevant on appeal.
 
 
 28
 Recognizing this, Friedman also urges another theory: The district court's decision on disqualification was wrong and "could well influence similar decisions in the future." Friedman's concern does not give him standing on which to appeal a substantive issue applicable only to his client, which issue the client has chosen not to appeal. Regardless of the correctness of the district court's decision, that decision is not properly presented for review on this sanctions matter.
 
 D. The Need for a Hearing on Sanctions
 
 29
 Friedman contends that it was error for the district court to impose sanctions without first holding a hearing during which he could present evidence regarding his good faith. Friedman's contentions are baseless. Judge Rovner found that the conduct in question was objectively as well as subjectively sanctionable. The standard for imposition of sanctions under Rule 11 or section 1927 includes an objective one. Whether an attorney who is being sanctioned acted in good faith is not material if his conduct was objectively unreasonable. Brown, 830 F.2d at 1436. Thus, any evidence relative to Friedman's subjective intent was not necessary to the district court's inquiry.[9]
 
 
 30
 In any event and more importantly, although the requirements of due process of law are applicable to a proceeding to impose sanctions, entitling a party or attorney to notice and opportunity to respond, Roadway Express Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980), the right to a hearing in these circumstances is obviously limited to cases where a hearing could assist the court in its decision. Where the sanctionable conduct occurred in the presence of the court, there are no issues that a hearing could illuminate and hence the hearing would be pointless. Hill v. Norfolk & Western Railway Co., 814 F.2d 1192, 1201 (7th Cir.1987). Friedman does not deny that he was given notice and an opportunity to respond. He filed three briefs in response to the defendants' request for sanctions. At no time did Friedman suggest any facts necessitating a hearing, nor did he request a hearing until after sanctions were imposed. He now claims that a hearing was necessary for him to prove that Kapco was responsible for the dilatory conduct, not he, and that in other unrelated cases he has made efforts to comply with the "high standards of an attorney" and has shown "his high concern for ethics." The district court properly concluded that this request came too late and that the hearing would serve no purpose. The district court personally observed Friedman's improper conduct both in pretrial conferences and in the hearings. Whatever good deeds and good intentions Friedman may have displayed in other cases, his conduct in this case was deficient and the district court did not require a hearing to make this determination, nor does due process require such.
 
 
 31
 E. Friedman's Disregard for the Orderly Process
 
 
 32
 Friedman objects to the district court's reference in imposing sanctions, to his disrespectful and unprofessional correspondence, to his misrepresentations of law and fact contained in his briefs, and to his late appearances for court hearings. These failings he excuses by noting that his letters though "uncongenial and even sassy" did not warrant sanctions; his briefs "did not prove convincing" but did not warrant sanctions; and his late appearances in court, either the fault of the trial judge or Kapco's president, not his, did not warrant sanctions. Friedman's excuses are unpersuasive.
 
 
 33
 The district court sufficiently detailed Friedman's egregious conduct in this respect and it need not be repeated here. A review of the record and Friedman's filings supports the district court's finding that Friedman abandoned professionalism, engaged in conduct deleterious to the judicial system, and evidenced a complete disregard for the district court and its orders. To suggest that his correspondence was merely "uncongenial and sassy," as Friedman claims, is understatement.[10] Friedman's briefs submitted to the district court were of similar vein and were filled with invective. The briefs misrepresented propositions of law in legal treatises and misrepresented facts. Friedman's filings with the district court further demonstrated an attitude of "file first, research later." This court has specifically condemned such conduct and warned of the consequences that befall attorneys who engage in it. Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir.1987). Finally, Kapco's president and Friedman evidenced a disregard for the court's proceedings by arriving late at a scheduled hearing before the district court.[11] Despite Friedman's protestations to the contrary, his numerous transgressions were sufficient to warrant sanctions.
 
 F. The Amount of Sanctions
 
 34
 The decision of what constitutes an appropriate sanction rests within the sound discretion of the district court. Cheek v. Doe, 828 F.2d 395, 397 (7th Cir.1987) (per curiam). However, the amount of the sanction must be a carefully measured response to the sanctioned conduct and the district court must specify the reasons for the sanction and the manner of computation. Brown, 830 F.2d at 1437. The district court here took extraordinary pains in providing this detail. The court's order imposing sanctions states that its purpose is to deter future conduct, to compensate the defendants for the expenses incurred, and to punish Kapco and Friedman. The district court reviewed the defendant's fee petitions and Friedman's objections and struck fee requests which did not pertain to the sanctioned conduct or which were duplicative. The district court's procedures in this regard comply scrupulously with the dictates of this court, see Flip-Side Productions, Inc. v. Jam Productions, Ltd., 843 F.2d 1024, 1037 (7th Cir.1988), and are immune from Friedman's numerous attacks. Friedman raises only two matters requiring brief discussion.
 
 
 35
 In imposing sanctions a court may take into consideration the sanctioned attorney's assets and his ability to pay. Brown, 830 F.2d at 1439 (citing Oliveri v. Thompson, 803 F.2d 1265 (2d Cir.1986)). This equitable consideration has particular relevance when the court imposes the sanction as deterrence and seeks to ensure that the amount is sufficient to punish the sanctioned attorney. On the other hand, when the sanction is imposed to compensate the opposing party, a court may temper the sanction award according to the sanctioned attorney's ability to pay. Brown, 830 F.2d at 1440. Friedman argues that the district court failed to take into account his ability to pay sanctions.
 
 
 36
 The record, however, reveals that the court fully addressed this matter. The district court stated that it was limiting the scope of the award to a fraction of the entire expenses incurred by the defendants in defending this litigation. The court further concluded that the amount awarded as a sanction was necessary to accomplish the sanction's purpose. Friedman protests that he has children attending college, that he drives older cars, and that he hasn't taken a vacation in years. Significantly, he does not state that he cannot pay the award, only that it will be a hardship on him. Perhaps, but that is the intent behind a sanction award imposed to deter and punish. A sanction without teeth may lack sufficient bite for these purposes. The district court did not abuse its discretion in awarding this sum.
 
 
 37
 Friedman also claims that the district court erred in awarding fees for an attorney's presence in court on October 8, 1985 when the record shows that this attorney was not present.[12] This claim has potential merit. Attorney Jesse Holland submitted an affidavit stating that he participated in the hearing on damages on October 7, 1985. Friedman objected to Holland's fee petition on the basis that the hearing on damages was held on October 8, 9 and 10; thus, Holland's affidavit claiming that he was in court on October 7 was in error. In her order of May 6, 1988, Judge Rovner, acknowledging that Holland's date was incorrect, stated that Holland simply made a typographical error and that, because she had "independent knowledge that Holland was present during the hearing on October 8," the 5.5 hours claimed for court appearance would be allowed. Presumably, this "independent knowledge" was her recollection.
 
 
 38
 Contradicting Judge Rovner's recollection, is the transcript of the October 8 hearing which quotes defense attorney Marvin Tenenbaum as saying, "Mr. Holland is not here today...." Tr. at 4. In addition, the court reporter did not list on the front of the transcript Holland as one of the lawyers making an appearance on October 8. The transcript of October 8 contains no indication that Holland made a later appearance in the course of the hearing.
 
 
 39
 Admittedly, Judge Rovner's recollection is entitled to considerable weight; but the contemporaneous transcript, quoting a lawyer to the effect that Holland was absent, is highly probative. It seems unlikely that the transcript was in error in the two places where Holland's absence was reflected. Also, there was no good reason for the transcript to have been "doctored" and it is a contemporaneous document recording the events of October 8.
 
 
 40
 We believe that this discrepancy necessitates a more conclusive finding by the district court on whether or not attorney Holland was, in fact, present in court on October 8 and we remand this limited issue for the district court's resolution. The district court on remand may wish to hear live testimony on this issue or to require the production of Holland's contemporaneous time records. Should the evidence establish Holland's presence in court on October 8, the award of $962.50 for his time would be entirely appropriate.
 
 III. Conclusion
 
 41
 This court has recognized that the imposition of sanctions "carries intangible costs for the punished lawyer." Tefken Constr., 847 F.2d at 444. While Friedman's concern for his reputation is understandable, he raises no argument suggesting that the district court did not fulfill its heightened responsibility in reflecting upon the nuances of the case and in formulating an appropriate sanction. Friedman was a zealous advocate but not a responsible one. His conduct and that of his client constitutes a severe abuse of the judicial system. We remand for further finding by the district court whether or not attorney Holland was present in court on October 8, entitling C & O to an award of $962.50 for Holland's time; in all other respects the decision of the district court imposing sanctions is
 
 
 42
 AFFIRMED.
 
 
 
 *
 This appeal was originally decided by unreported order on August 11, 1989. The Court has subsequently decided to issue the decision, as modified, as an opinion. See Circuit Rule 53
 
 
 [1]
 Since the district court's order, Kapco has declared bankruptcy and the trustee in bankruptcy for Kapco has not appealed the award of sanctions against Kapco nor has Kapco appealed the judgment of the underlying litigation
 
 
 [2]
 Only defendants Amoco Oil Company and Programmers Investment Corporation were not named in this original complaint. They were later named as defendants in Kapco's second complaint. See infra pages 1489 and 1492 n. 6
 
 
 [3]
 Kapco resisted the consolidation of these cases, contending that the first complaint was no longer "pending" since it was dismissed when the case was settled. Kapco took this position in the face of this court's statement in denying Kapco's appeal that the action "is very much alive." 773 F.2d at 153
 
 
 [4]
 The district court found that Kapco's president was not a credible witness, that Kapco failed to prove any damages resulting from defendants' conduct under the settlement agreement, that the defendants did not engage in a conspiracy against Kapco, and that the defendants' conduct did not violate Kapco's copyright. Accordingly, the court denied Kapco recovery on its claims and dismissed its second lawsuit
 
 
 [5]
 We refrain from commenting upon all points raised in Judge Rovner's well-developed findings of fact and conclusions of law. Friedman does not challenge many of the bases upon which Judge Rovner imposed sanctions and, given Judge Rovner's thorough discussion in her orders totalling one hundred pages in length, we find no need for further comment on those points
 
 
 [6]
 Friedman suggests that the second complaint was justified because it named additional defendants, requested a jury, and added two counts--one alleging a breach of contract, the other, copyright infringement. Simply, the additional defendants were those individuals from whom Kapco sought discovery in the first proceeding and the district court denied Kapco's discovery request as irrelevant and unnecessary. The request for a jury, Friedman admits, was an attempt to avoid Judge Rovner's involvement in the resolution of the dispute since Friedman apparently believed that the court's participation in the settlement negotiations resulted in bias. (If true, of course, Kapco should have pursued remedies other than the filing of a new complaint.) The breach of contract count alleged factual disputes which were currently pending before the district court and therefore did not require a new complaint. Finally, the count of copyright infringement was wholly frivolous
 
 
 [7]
 Friedman's representations to this court that his claims had merit are of questionable veracity. For example, in his reply brief, Friedman states:
 Judge Bua, who assumed the responsibility for Kapco I during Judge Rovner's grave illness, clearly held in his Memorandum Opinion and Order of March 29, 1985, (R-32) that defendants had breached the December 20, 1984 Settlement Agreement. [emphasis added] Furthermore, Judge Rovner, accepted Judge Bua's finding of a breach and specifically ruled that Plaintiff had established a prima facie case on damages.... Clearly, Friedman did not act frivolously or without factual basis in the litigation.
 Reply Brief at 3.
 Judge Bua never ruled that the defendants had breached the settlement agreement. Judge Bua's order interpreted the terms of the settlement agreement and stated that Kapco's allegations were not insubstantial and that Kapco may be entitled to damages. Moreover, Friedman's reliance upon Judge Rovner's denial of defendants' motion to dismiss after Kapco's presentation of evidence to suggest that Kapco's claims were not frivolous is misleading, at best. Judge Rovner specifically stated that she permitted the hearing to proceed only due to an abundance of caution and that she had "stretched" the facts presented to find that Kapco established a prima facie case.
 
 
 [8]
 Friedman protests that his presentation of evidence was impeded by the court's rulings on his discovery motions and that this lack of discovery contributed to his inability to present a stronger case. However, the responsibility for Friedman's inability to discover facts for the hearing rests at Friedman's own feet. Beyond the motion for discovery from nonparties, which the district court properly denied as irrelevant, Friedman filed no discovery request. The district court invited Friedman over six months before the hearing to seek appropriate discovery. Friedman exhibited no interest in discovery until the hearing. This newfound interest came too late to make any convincing argument before the district court and this court that Kapco's case suffered from any restrictions on discovery imposed by the district court
 
 
 [9]
 Although the district court noted that its decision to impose sanctions was based on "objective and subjective rationales," it concluded that Friedman's conduct was objectively improper, thereby negating any need for a hearing to inquire into Friedman's subjective intent. This court has suggested that "subjective bad faith or malice may be important when the suit is objectively colorable." In re TCI, 769 F.2d at 445. See Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1083 (7th Cir.1987). Because the district court also concluded that Friedman's filings were frivolous, subjective "good faith" is not an adequate defense
 
 
 [10]
 One example suffices to demonstrate the tenor of Friedman's correspondence. After a series of letters in which opposing counsel had reasonably proposed a solution to the parties' billing dispute, Friedman responded:
 Dear Marvin:
 The $1,600.00 was two weeks ago. Last week it was $2,639.65. Next week, who knows? The wheel of fortune goes round and round.
 On page 2 of your most recent letter (which bears a date of June 5, 1985, so you will know to which of your many opuses I'm referring) you indicated that your client, Tom Carter, presented the stated proposal to my client, Ken Rubel. Gosh, Marvin, is someone smoking funny cigarettes? Did Tom Carter happen to notice whether Ken Ruble's eyes were open when he was talking to him? Is someone posturing again? Or is someone just making up stories? In short, no such offer was made to Mr. Rubel.
 I am enclosing an ABANDONMENT form prepared for your client's application to register the trademark "Dash-Go". Naturally, I would appreciate your having your client sign his name to it. Please don't worry about the expense and effort of the Notice of Opposition that we filed. My side-kick Bruce, really benefited [sic] from the experience. I appreciate your cooperation in this matter.
 Concerning your threat, intimidation, and suggestion of dire consequences, I thought you tried that last week. As I stated in my letter of May 31, 1985:
 "You pay, we ship."
 The word "pay" means $2,639.65. I just don't see how you feel that is unjust, unlawful, illegal, or even a sick bird.
 Unfortunately, your continuing posturing and your client's (Tom Carter's) recurring harassment of Ken Rubel at the CES Show has awakened Mr. Rubel out of his coma. Previously, Ken had been satisfied to let this matter simmer on the back burner and eventually go away. However, because of the constant and egregious aggravation he has suffered from you and from Mr. Carter at the CES Show, he has instructed me to become serious about this litigation and take some meaningful action, instead of letting the whole matter just slide as in the past.
 Very Truly Yours,
 Eugene F. Friedman
 
 
 [11]
 Although Friedman contends that the record does not support this finding, the record clearly establishes that Kapco and Friedman were nearly one hour late in arriving at the hearing scheduled particularly for their convenience
 
 
 [12]
 Friedman also notes inconsistencies in the attorneys' time records underlying the fee petitions. The district court corrected these inconsistencies to conform to the record and Friedman's objections in this respect are unavailing