December 29, 1992

CLERK OF COURT
SUPREME COURT, CNMI
FILED

92 DEC 29 A 8: 0 1

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LUCKY DEVELOPMENT CO., LTD., )<br> Plaintiff, )<br> )<br> vs. )<br> )<br>TOKAI, U.S.A., INC., _et al._ )<br> Defendants, ).<br> )<br> and )<br> )<br>THEODORE R. MITCHELL, )<br> Respondent/Appellant. )<br>_____) | APPEAL NOS. 91-023,<br>91-024, 91-026, 91-027,<br>& 91-028 (Consolidated)<br>CIVIL ACTION NO. 90-828<br><br><br>OPINION |

Argued September 3, 1992

Counsel for Plaintiff: David A. Mair
 MAIR, MAIR, SPADE &
 THOMPSON
 Suit 807, GCIC Building
 414 West Soledad Avenue
 Agana, Guam 96910

Counsel for Defendant Tokai,
 U.S.A., Inc.: Carlsmith Ball Wichman
 Murray Case Mukai &
 Ichiki
 P. O. Box 241 CHRB
 Saipan, MP 96950

Counsel for Defendant Ursula
 Aldan: John Moore
 Moore, Ching & Boertzel

 Suite 400, GCIC Building
 414 West Soledad Avenue
 Agana, Guam 96910

 Counsel for Defendant
 Victorino Igitol: F. Randall Cunliffe
 Cunliffe, Cook, Maher &
 Keeler
 Suite 200
 210 Archbishop F.C. Flores
 Street
 Agana, Guam 96910

 Counsel for Respondent/
 Appellant Theodore R.
 Mitchell: Theodore R. Mitchell
 Jeanne H. Rayphand
 P. O. Box 2020
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

## FACTS

These appeals all arise from one civil action filed in the Superior Court and deal with three different sanctions against Attorney Theodore R. Mitchell (hereafter Mitchell). Because they arise from the same set of pleadings, other court papers, and court proceedings, we will state the procedural history first, in chronological order. Then, for each particular sanction, we will state additional pertinent facts, if any, with our analysis.

## Chronology

1. Attorney Antonio Atalig (hereafter Atalig), on behalf of Lucky Development Co., Ltd. (hereafter Lucky), filed an action on September 14, 1990, against U.S. Commonwealth Development Co.,

346

Antonio S. Guerrero, Victorino Igitol and Tokai U.S.A., Inc.

2. On October 5, 1990, Tokai U.S.A., Inc. filed its motion to dismiss the complaint and for sanctions against Lucky and its attorney, Atalig.

3. On October 9, Commonwealth Development Co. and Antonio S. Guerrero filed their motions to dismiss, or in the alternative for summary judgment. Before the hearing on these motions, Atalig withdrew as counsel for Lucky.

4. Mitchell, as Lucky's new counsel, filed on October 19 a first amended complaint. Antonio S. Guerrero and Commonwealth Development Co. were taken out of the case, and Ursula L. Aldan was added as a defendant.

5. Tokai U.S.A., Inc.'s motion for sanctions against Lucky and its attorney, Atalig, with respect to the original complaint was heard on October 31, and on November 9, Atalig was sanctioned.

6. Between October 29 and December 5, 1990, Tokai U.S.A., Inc., Victorino Igitol and Ursula Aldan filed their answers and counterclaims. Lucky filed a reply. Tokai Saipan, Inc. entered the lawsuit and filed a third-party complaint.[1]

7. On March 20, 1991, Lucky filed a motion for summary judgment on the counterclaim filed by Ursula Aldan and for sanctions. It also filed a motion for summary judgment on Count II of Tokai U.S.A., Inc.'s counterclaim and for sanctions. Lastly, it filed a motion to dismiss the third-party complaint of Tokai

---

[1] Counsel for Tokai Saipan, Inc. was sanctioned by the trial court because of the filing of this third-party complaint. This sanction is the issue in a separate appeal.

Saipan, Inc., or in the alternative for summary judgment on Tokai Saipan, Inc.'s Count II of its third-party complaint and for sanctions.

8. On March 21, 1991, Lucky, through its new counsel, Mitchell, filed a motion for relief from the order sanctioning its former attorney, Antonio Atalig.

9. On May 1, Ursula Aldan and Tokai U.S.A., Inc. separately filed a notice of motion and motion for summary judgment on the first amended complaint.

10. On May 6, Lucky, through Mitchell's associate, signed a stipulation and order prepared by Mitchell's office that consolidated all the pending motions for hearing on June 7. The stipulation also required Lucky to file by May 28, 1991, its opposition to the motions for summary judgment filed by Ursula Aldan and Tokai U.S.A. The stipulated order was entered on May 7, 1991. This order required Tokai U.S.A., Inc. and Ursula Aldan to file their reply to Lucky's opposition to their motions for summary judgment on or before June 4, 1991. Lucky was to reply to Ursula Aldan's opposition to Lucky's motion for summary judgment on her counterclaim and for sanctions. It was also to reply to Tokai U.S.A., Inc.'s opposition to Lucky's motion for relief from order. Additionally, Lucky was to reply to Tokai U.S.A., Inc.'s opposition to Lucky's motion for summary judgment on Count II of the counterclaim of Tokai U.S.A., Inc. and for sanctions. Finally, Lucky was to reply to Tokai Saipan, Inc.'s opposition to Lucky's

motion to dismiss the third-party complaint of Tokai Saipan, Inc. and for sanctions. All the replies were to be filed not later than June 4.

11. Also on May 6, Lucky, through Mitchell, sent a letter to counsel announcing a resumption of depositions on May 20.

12. On May 7, counsel for Tokai U.S.A., Inc. suggested that further depositions be delayed pending ruling by the court on the pending motions.

13. On May 10, Tokai U.S.A., Inc. filed a motion for protective order requesting that depositions not be taken pending resolution of the motion of Tokai U.S.A., Inc. for summary judgment, or until further order of the court. The motion for protective order was to be heard on May 15, 1991.

14. On May 13, Lucky, through Mitchell, sent a letter canceling all pending depositions.

15. On May 15, Lucky, through Mitchell, filed Lucky's motion to disqualify Judge Hefner from the case.

16. On May 21, Judge Hefner entered his order recusing himself and transferring the matter to Judge Castro.

17. On May 28, the day Lucky's opposition to defense motions was due, Lucky had not filed any opposition. Lucky did file its motion to vacate that portion of Judge Hefner's May 21 order assigning the case to Judge Castro.

18. On May 29, Lucky filed its motion to disqualify Judge Castro from the case.

349

19. On May 30, Lucky, through Mitchell, repudiated by letter the stipulated order entered by the court on May 7.

20. By letter dated May 31, June 3, and June 4, counsel for the various defendants notified Lucky of the ineffectiveness of its unilateral repudiation. They stated that they would appear at the hearing calendared for June 7.

21. On June 4, Lucky, through Mitchell, sent a letter notifying defense counsel that it intended to file before the 7th one or more motions to challenge the validity of the stipulated order. It would also seek additional time to complete discovery.

22. The dispositive motions came on for hearing as scheduled on June 7, 1991. Judge Castro denied Lucky's motion to vacate that portion of Judge Hefner's May 21 order assigning the case to Judge Castro. He also denied Lucky's motion to disqualify Judge Castro. He heard argument on the motions for summary judgment filed on behalf of Ursula Aldan and Tokai U.S.A., Inc., joined by Victorino Igitol. On this same day, Mitchell, on behalf of Lucky, filed a motion for discovery conference to be heard on June 26.

23. On July 3, 1991, the court granted summary judgment and raised *sua* *sponte* the issue of proposed sanctions against Mitchell. A hearing on the sanctions issue was set for July 31.

24. On July 30, Mitchell, on behalf of Lucky, filed a second motion to disqualify Judge Castro. The court denied the motion from the bench on July 31, and noted the denial in its written order of September 18, 1991.

25. On August 19, the trial court filed its order issuing sanctions, including a request that Mitchell show cause within 10 days why the court should not suspend him from practicing before the Superior Court.

26. On August 28, Mitchell, on his own behalf, filed a motion to vacate assignment of the case, to disqualify law clerk Skinner and to disqualify Judge Castro. The court denied this motion by order filed September 18.

27. On September 18, the court entered its order imposing Rule 11 sanctions against Mitchell for the filing of the amended complaint and the motion to vacate the assignment of the case and to recuse Judge Castro. In the same order, the trial court further sanctioned Mitchell by suspending him from the practice of law before the Superior Court, under its inherent power authority. On this same day, but in a separate order, the trial court imposed another Rule 11 sanctions against Mitchell for the filing of the August 28 motion to vacate assignment of the case, to disqualify law clerk Skinner and to disqualify Judge Castro.

All the issues in all appeals are subject to the abuse of discretion standard. Lucky Development Co., Ltd. v. Tokai, U.S.A., Inc., No. 91-003 (N.M.I. April 20, 1992).

## APPEAL NO. 91-023 -- SUSPENSION

This is an appeal from the September 18, 1991, Order Suspending Attorney Theodore R. Mitchell from Practicing before the

351

Commonwealth Superior Court. The imposition of sanctions was made in the July 3, 1991, summary judgment. The appeal concerns the use of the trial court's inherent powers.

## Analysis

The sanction of suspension is reversed.

The trial court stated in three orders that it was exercising its inherent powers to suspend Mitchell.[2]

In the July 3 order, the trial court stated that, "[t]he court does not believe that the Rule 11 sanction is sufficient to protect the interests of justice." Decision and Order at 18. Further, the court said that,

> it will exercise its inherent powers and order that Mr. Mitchell explain in writing why this court should not order that he return to his client all fees received during his pursuit of this matter. The extraordinary nature of this proposed sanction is no more extraordinary than Mr. Mitchell's blatant disregard for the responsibilities inherent in being an officer of the court in this Commonwealth. He has ignored the trust his client has placed in him by pursuing a matter in which he must have known that no resolution in his client's favor was forthcoming. To this extent, a fraud has been perpetrated on Lucky Development for which this court is contemplating restitution.

(Emphases added.) Id.

In the August 19 order, the court agreed with Mitchell that his client has an adequate remedy in a malpractice suit if it decided to do so, and therefore, "the court need not invoke its

---

[2]The three order are the July 3, 1991, Decision and Order, the August 19, 1991, Order Issuing Sanctions, and the September 18, 1991, Order Suspending Attorney Theodore R. Mitchell from Practicing Before the Commonwealth Superior Court.

equitable power to ensure that justice is done." Order Issuing

Sanctions at 26. It further stated, however, that,

> This court reiterates its believe, however,
> that Mr. Mitchell's abusive tactics were
> designed to increase his own client's costs in
> litigating this matter.
>
> . . .
>
> In light of Mr. Mitchell's conduct
> throughout this litigation, including his
> statements at the July 31, 1991, hearing, the
> court will strongly recommend that the CNMI
> Bar Association investigate his continuing
> ability to practice law in this jurisdiction.
> The court's exercise of this inherent power is
> not limited by the imposition of Rule 11
> sanctions.
>
> . . .
>
> In summary, Mr. Mitchell failed to
> investigate the legal and factual propriety of
> his claims prior to filing this lawsuit. If
> he was not aware of the frivolousness of his
> claims, he should have become aware after
> receiving the defendants' answers and reading
> their defenses. At this time, Mr. Mitchell
> had a legal and ethical responsibility to
> review the propriety of his claims. He did
> not. He then failed to mitigate his damages
> by voluntarily dismissing the suit when the
> defendants raised the statute of frauds
> defense. Instead, he admits that he used
> discovery to pursue factually and legally
> groundless claims that were not even present
> in his complaint. He later failed to file a
> response to the defendants' motions for
> summary judgment. He exercised bad faith in
> attempting to delay the hearing on summary
> judgment by filing motions to vacate
> assignment and for recusal. His entire
> pursuit of this matter was intended to
> increase his own client's fees and the
> defendants' costs in litigating this matter.
>
> During the course of the hearing on
> sanctions, Mr. Mitchell made scurrilous and
> sarcastic remarks concerning other members of
> the local bar, including defendants' counsel
> in this case. Mr. Mitchell also admitted to
> this court that he would not be deterred
> should it issue sanctions against him based on

the frivolous complaint he filed in this case.
. . .

> Any attorney who could make such a shocking admission obviously has lost sight of the responsibilities inherent in being an officer of this court. He obviously has no appreciation for the serious nature of this proceeding. He has no respect for this court or the proper use of its processes. He has no respect for the members of the local bar. <u>His own words, in addition to the abusive tone he maintained throughout the hearing, lead the court to the conclusion that there is no alternative but to request that he show cause as to why this court should not suspend him from practice before it pending an investigation by the local bar association</u>.

(Footnotes omitted.) (Emphasis added.) <u>Id</u>. at 27-29.

In its September 18 order, the court stated that, "Since the Disciplinary Rules are obviously not the only source our courts can look to when seeking to punish an attorney's conduct, <u>the only issue left for resolution is whether the inherent power may be utilized to suspend Mr. Mitchell because of his conduct in this case</u>." (Emphasis added.) Order Suspending . . . at 7. Further, it declared that:

> In the present case, no investigation is necessary. This Court has already witnessed Mr. Mitchell's conduct first-hand and documented his violations in its opinions. In fact, <u>the impetus for this suspension stems from a statement made before this Court</u>. There is nothing for the CNMI Bar Association to do with respect to this suspension. As previously noted, this Court is not invoking the Disciplinary Rules. Therefore, the Bar Association has no jurisdiction since the Court is not suspending Mr. Mitchell under its rules relating to professional conduct.

(Emphasis added.) <u>Id</u>. at 9.

354

The court went on to say that,

> Not surprisingly, Mr. Mitchell chose not to attempt to explain or defend this statement [the kill me, stifle me soliloquy] in his answer to this Court's order to show cause why he should not be suspended from the practice of law. There is no explanation other than a complete lack of respect for this Court and its processes. What Mr. Mitchell essentially told the Court is that he will continue to file frivolous pleadings in this Court and no monetary sanction will deter him.
>
> . . .
>
> This Court could not have found Mr. Mitchell in contempt for this statement because it is a statement of prospective defiance. The contempt power only reaches willful disobedience of a court's order. This is an extremely rare, if not unprecedented instance where a court has been threatened with <u>future</u> abuses of its processes rather than actual defiance. (Emphasis in original.) Since Mr. Mitchell's conduct cannot be punished under Rule 11 or the contempt power, this is a prime example of a rare instance where the inherent power must be invoked to protect the Court's processes.
>
> . . .
>
> This Court again emphasizes the rare quality of the outrageous statements Mr. Mitchell's made before this Court at the July 31, 1991 hearing.
>
> . . .
>
> <u>The fact he cannot see the deficiency in the complaint, and told this Court that he would do it again is reprehensible. He also filed motions in bad faith with this Court in order to delay the inevitable result in the underlying litigation</u>.

(Emphasis added.) <u>Id</u>. at 11-13.

As can be seen from the above quotations, the trial court was relying on its inherent power. However, in the July 3 order, the trial court was talking about returning client's fees, about ignoring a client's trust, and about a fraud perpetrated on a

355

client. This proposed sanction was discarded in the August 19 order. Instead, the court concluded that Mitchell's words and abusive tone throughout the hearing required that he show cause why he should not be suspended. Then, in the September 18 order of suspension, the trial court reiterated that, "the impetus for this suspension stems from a statement made before this Court." But the court also stated that it was reprehensible that Mitchell could not see the deficiency in the complaint and told the court that he would do it again. Also, the court stated that Mitchell filed motions in bad faith. It therefore concluded that, "This Court is suspending him under its inherent power to protect the integrity of its processes."

It is not clear what the trial court means by "integrity of its processes." Does it refer to the statements made before the court? Or, does it refer to the complaint and the motions? Or, to all?

In Commonwealth v. Borja, No. 91-010 (N.M.I. June 15, 1992), we stated that "Civil contempt . . . flows from the court's inherent powers. . . . " Slip op. at 5. We announced the legal principle that "Sanctions for civil contempt are employed either to coerce compliance with a court order or to compensate a complainant for losses sustained." Id. at 6.

The record does not disclose any court order that the trial court wanted to coerce compliance with. Based on the above quotations from the court's three orders, there is no indication

356

that the court's inherent power was being used to coerce compliance with a court order.

Neither does the record support a conclusion that the trial court's inherent power was being exercised to compensate a complainant for losses sustained. While the July 3 order appears to contemplate compensation to a complainant for losses sustained, this contemplated sanction was later rejected in the trial court's August 19 Order Issuing Sanctions.

It therefore appears that the trial court was sanctioning Mitchell for criminal contempt. If this is so, then it was not using its inherent powers. In Commonwealth v. Borja, supra, we noted that, "Criminal contempt is specifically addressed by Commonwealth law and our court rules." Slip op. at 5. As such, the source of power for criminal contempt is not the court's inherent powers. As we stated in the above case,

> Sanctions for criminal contempt . . . are unconditional, and are intended to punish the contemnor and vindicate the authority of the court. Our courts are empowered by statute to impose penalties for criminal contempt . . . but a court should (a) follow the procedural requirements of Rule 42, Com.R.Crim.P., or, where appropriate, (b) instruct the prosecutor to file a charge for criminal contempt. The penalty for criminal contempt in the Commonwealth is limited to $100 or six months incarceration, or both.

(Citations omitted.) (Footnotes omitted.) Id. at 7.

Because the trial court was sanctioning Mitchell under its criminal contempt power, it had certain procedures to follow. As stated in Commonwealth v. Borja, supra, "Under Rule 42 of the

357

Commonwealth Rules of Criminal Procedure, the Superior Court may find one in criminal contempt by two methods: summary disposition or upon notice and hearing." Id. at 9.

Neither one of the two methods was followed. It was not a summary disposition since it entailed a period of time between July and September, and it allowed Mitchell to show cause in writing. The second method was not followed because although notice was given, no hearing was held.

As a criminal contempt matter, the court was restricted to the type of punishment available. Under the statute, the court could only impose a maximum fine of $100, or a maximum jail sentence of six months, or both. The court is not empowered under the statute to suspend an attorney.

There is no need to address the issue raised by Mitchell that the Superior Court has no authority to suspend an attorney. We limit our holding only to the conclusion that what is involved here is criminal contempt. As a criminal contempt matter, the source of this power is statutory. There is further no need to address the other due process arguments of Mitchell.

**APPEAL NOS. 91-024, 91-027, AND 91-028 -- RULE 11 SANCTIONS**

Appeal No. 91-024 is an appeal by Mitchell from the August 19, 1991, order issuing Rule 11 sanctions against him.

Appeal No. 91-027 is an appeal by Mitchell from the September 18, 1991, imposition of the amount of Rule 11 sanctions against

him.

Appeal No. 91-028 is an appeal by Tokai, U.S.A., Inc. from the order of the trial court entered on September 18, 1991, that Tokai waived its fees and costs against Mitchell.

On July 3, 1991, the trial court held that Mitchell violated Rule 11. The court set July 31 as the date for the hearing on Rule 11 sanctions.

## Analysis

The imposition of sanctions is reversed.

In its July 3 order, the trial court stated that Rule 11 sanctions were in order because "This entire suit has no basis in the law." Decision and Order at 17. Further, the court stated that:

> This entire matter could have been resolved in a matter of minutes if Mr. Mitchell had taken the time to look at the Commonwealth's Statute of Frauds. Mr. Mitchell made no arguments for the extension or modification of existing law. He merely argued that a trial was necessary to determine the "intent" of the parties involved. Since a cursory examination of the relevant statute in this jurisdiction reveals otherwise, Mr. Mitchell failed to conduct reasonable research into the factual and legal foundation of his claim before filing his initial pleading.
> Furthermore, this court finds that Mr. Mitchell deliberately filed motions to vacate the transfer of the case to this court and for recusal in order to prolong the inevitable result in this matter.

As noted above, the trial court used both prongs of Rule 11 in finding Mitchell guilty of sanctionable conduct. First, it

359

found the amended complaint had no basis in law, and that, "Mitchell failed to conduct reasonable research into the factual and legal foundation of his claim before filing his initial pleading." Second, the court found that the motions to vacate the transfer and for recusal were filed for an improper purpose. Implied here is that even if the motions had merit, they were filed "in order to prolong the inevitable result in this matter."

We are not convinced that the amended complaint was frivolous. The statute of frauds does not require Mitchell to forego the filing of the complaint. The statute of frauds is an affirmative defense. The complaint need not show that facts exist to ward off the defense of the statute of frauds.

We further are not convinced that the motions to vacate and recuse were made for an improper purpose. It must be kept in mind that the hearing on the motions for summary judgment was scheduled for June 7. Judge Hefner recused himself on May 21 and transferred the case to Judge Castro. Mitchell filed the motion to vacate the transfer on May 28, and the motion to recuse Judge Castro on May 29. We do not see how the motions were made for an improper purpose in view of the time constraints that Mitchell was working under. The motions to vacate the transfer of the case to Judge Castro was filed only four days after Judge Hefner recused himself, and the motion to disqualify Judge Castro was filed only five days after Judge Hefner's recusal. The motions for summary judgment were scheduled to be heard nine days later. These particular

360

motions were not filed for an improper purpose.

The case cited by the trial court, <u>Aetna Life Insurance Co. v. Alla Medical Services, Inc.</u>, 855 F.2d 1470, 1476 (9th Cir. 1988), is inapposite. The Ninth Circuit found that the motions and papers filed by defendants in that case could be considered as part of a persistent pattern of clearly abusive litigation activity. It made this finding in view of the following facts: 1) the complaint was filed on October 24, 1986; 2) during the next two months, two of the defendants filed motions for more definite statement; 3) nearly four months after the complaint was filed, the district court denied a motion to dismiss brought by sixteen of the defendants. The court in that case was justified in finding a pattern by the defendants of trying to delay the filing of an answer to the complaint.

Because of our conclusion, there is no need to address the due process arguments of Mitchell, or to address Tokai, U.S.A., Inc.'s appeal on the waiver portion of the order.

## APPEAL NO. 91-026 -- RULE 11 SANCTIONS

This appeal is taken from the September 18, 1991, Order Denying Motion to Vacate Transfer and Motion for Recusal of Law Clerk and This Court [Superior].

## ANALYSIS

The imposition of sanctions is reversed.

The trial court concluded that, "Mr. Mitchell still continues

361

to file motions with this Court for bad faith purposes, and without proper inquiry into their factual and legal foundations." Order at 13. We agree with this conclusion.

In the context of the number of similar motions made by Mitchell, the trial court judge correctly concluded that such motions were being filed for bad faith purposes. See pages 1-7 of Order for a brief history of the several motions to recuse filed by Mitchell.

We also agree with the trial court that Mitchell had no standing to bring the motions in his own name. The trial court correctly concluded that Mitchell did not make a proper inquiry into the legal basis of his motions. As noted by the trial court in its order, the summary judgment of the underlying litigation became final and non-appealable on August 5, 1991, when the plaintiff failed to perfect an appeal. Mitchell agrees with this date. In addition, Mitchell's relationship as an attorney to the plaintiff terminated on August 13, 1991, 8 days after the summary judgment became final and non-appealable. A review of the authorities fail to disclose that such an attorney would still have standing to file such a motion 23 days after the case becomes final and non-appealable, and 15 days after his attorney/client relationship is terminated. Cf. Kapco Manufacturing Co., Inc. v. C & O Enterprises, Inc., 886 F.2d 1485 (7th Cir. 1989).

However, in spite of all of the above, the trial court abused its discretion when it did not give notice to Mitchell that it was

contemplating an order to sanction Mitchell, and did not give Mitchell an opportunity to respond. Without such notice and an opportunity to respond, Mitchell was denied his right to due process of law.

 Notice and an opportunity to respond must always be given before sanctions can be imposed. The opportunity for a hearing must also be given in those situations where a hearing would assist the court in its decision as to whether sanctions should be imposed or not. If the conduct being sanctioned occurs in the presence of the court and there are no issues that a hearing would resolve, then a hearing would not be necessary. However, notice and the opportunity to respond must always be provided. These were not afforded Mitchell.[3]

## CONCLUSIONS

### Appeal No. 91-023 - Suspension

The order suspending Mitchell from the practice of law is

---

[3]The trial court cites to Commonwealth v. Bordallo, No. 90-050 (N.M.I. July 2, 1991); Tenorio v. Superior Court, No. 89-002, 1 N.Mar.I. 12 (N.M.I. 1990); Commonwealth v. Kawai, No. 89-011, 1 N.Mar.I. 27, reh'g denied 1 N.Mar.I. 29 (N.M.I. 1990); and Eisenberg v. Univ. of New Mexico, 936 F.2d 1131 (10th Cir. 1991) in support of its decision not to give notice to Mitchell. Reliance on the Tenorio case is misplaced. The Tenorio case was the result of motions for sanctions filed by both parties to the case. Both parties had adequate notice and an opportunity to respond. Both not only filed extensive memoranda, but were allowed to orally argue their case before the Court.

While it is true that the Eisenberg case does state that the existence of Rule 11 is adequate notice to all attorneys, we point out that the attorney to be sanctioned in that case was given notice by the trial court through an order to show cause. 936 F.2d at 1135.

We acknowledge that the Bordallo and Kawai cases do stand for the proposition that the existence of Rule 38(b), R.App.Proc. (Rule 38(b), R.App.Proc., is similar to Rule 11, Com.R.Civ.P.), allows this Court to sanction attorneys without additional notice. These two cases find support in the Tenth and Eleventh Circuit Courts of Appeals. See Eisenberg v. Univ. of New Mexico, supra; Donaldson v. Clark, 819 F.2d 1551 (11th Cir. 1987). However, upon review of decisions the Ninth Circuit Court of Appeals regarding Rule 11, it is clear that notice and an opportunity to respond must be afforded an attorney before sanctions are imposed. Hudson v. Moore Business Forms, Inc., 898 F.2d 684 (9th Cir. 1990). We are in agreement with the decisions of the Ninth Circuit Court of Appeals on this issue.

We now expressly overrule Bordallo and Kawai to the extent that they stand for this proposition.

**REVERSED** and **REMANDED** with instructions that the trial court give notice to Mitchell that it will be sanctioning him under its criminal contempt power. Mitchell must be given a hearing to defend. If, after a hearing, the court concludes that Mitchell is to be sanctioned, then the trial court is limited to the sanctions provided by the statute.

### Appeal Nos. 91-024, 91-027, & 91-028 - Rule 11

The trial court's issuance and imposition of sanctions in the amount of $7,360, payable to Ursula L. Aldan, is **REVERSED** and **VACATED**.

### Appeal No. 91-026 - Rule 11

The trial court's issuance and imposition of sanctions in the amount of $2,000, payable to the Clerk of Courts of the Superior Court, is **REVERSED** and **VACATED**.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Justice

Jesus C. Borja
Justice